58TH STREET PLAZA THEATRE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JEANNETTE BRECHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEO BRECHER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24825, 24826, 24827. Promulgated February 27, 1951.

*Paul R. Russell, Esq.*, and *Howard D. Pack, Esq.*, for the petitioners.

*Joseph F. Lawless, Esq.*, for the respondent.

474

OPINION.

MURDOCK, *Judge:* The first two issues can be considered together. The Commissioner argues that the lease from Reade to Brecher had no value on February 28, 1942, but the evidence shows that it was

worth at least $200,000 at that time. The other contention of the Commissioner is that Plaza was already the beneficial owner of the lease, and, as Brecher controlled Plaza, the transaction whereby Brecher sold the lease to Plaza was lacking in substance and bona fides. It is appropriate to scrutinize the various transactions closely since the stock of Plaza at the time was held by Brecher and Jeannette. However, it is clear from the evidence that Brecher negotiated the Reade lease for his own benefit and not on behalf of Plaza. Furthermore, the evidence shows that Plaza could not have obtained the lease from Reade. Plaza was operating the theater until February 28, 1942, on a month to month basis and benefited by the acquisition of a permanent lease. It did not pay more than the lease was worth. Careful scrutiny fails to disclose any sufficient reason for failing to recognize the reality and genuineness of these transactions for tax purposes. Brecher sold the lease, a capital asset, which had no basis for gain in his hands. The payments which he received were long term capital gains as received. Plaza then had an asset which was exhausting. It was entitled to take annual deductions to recover its cost over the remaining life of the lease.

The third and fourth issues can also be considered together. The Commissioner has refused to recognize Jeannette as the operator of the theater during 1943 and has added to the reported income of Plaza for that year the additional income from the operation of the theater which was reported by Jeannette. Jeannette received that income so the Commissioner held that it is taxable to her as a dividend from Plaza. Jeannette actually entered into a sublease of the theater with Plaza and went through the formalities of replacing Plaza as the operator of the theater. The Commissioner argues that those formal acts were lacking in substance, Plaza had no business purpose in entering into the lease, it was not an arm's length transaction, it was lacking in bona fides, and the whole arrangement should be disregarded for income tax purposes. The intimate relationship of the parties again requires close scrutiny of their various acts to determine whether or not they should be recognized for income tax purposes.

Plaza was operating two theaters of which the one here involved was by far the more important. Plaza had purchased the lease from Brecher for $200,000 just 10 months before the execution of the sublease to Jeannette. Qualified witnesses testified that the lease was worth more than $200,000 at that time. The operation of the theater during 1942 had been successful. It was benefiting from the stimulus of the war. The prospects on December 29, 1942, for increased earnings were good. The lease was for 5 years with provisions for renewals. Plaza reported net income of about $16,000 for 1942, most of which must have come from the operation of this theater. The directors of Plaza were Brecher, Jeannette and Schiffman, a non-

stockholder employed by Brecher. Brecher was the manager of the theater and the parties fully intended that he should continue as manager of the theater. The maximum gross income above the rental to Reade which Plaza could receive from the sublease was $25,000. It would have to offset against that its annual deduction for depreciation on the lease in the amount of $11,428.56, perhaps other depreciation deductions on equipment of the theater, and $5,000 of the salary of Brecher which it intended to pay him in addition to the salary paid him for the management of the other theater. Those deductions would reduce the gross income of $25,000 to net income of about $8,500.

Plaza, at the time of the execution of the sublease, could anticipate the loss of a large part of the profits reasonably in prospect from its own operation of the theater. It actually reported net income of only $7,965.33 for 1943. It is unreasonable to believe that Plaza, having just acquired such a valuable lease, would have entered into a sublease of this kind with any stranger or in an arm's length transaction. Benefits to Brecher, Jeannette, or the children personally do not help the case for Plaza. The sublease was obviously bad business for Plaza, and Brecher and Jeannette knew it better than anyone. They knew that the income of Plaza was subject to excess profits tax whereas any income of Jeannette would not be. They also knew that Jeannette had very little income of her own, whereas Brecher had substantial income. The prospective tax saving in the arrangement is too obvious to be overlooked as is the rearrangement of income in an intimate family group. Motives other than the best interest of Plaza motivated the sublease to Jeannette. The sublease was terminated at some time in 1944 not shown by the record, under circumstances not shown by the record, which Brecher said he was not prepared to go into when he was questioned about them on cross-examination.

The Commissioner was justified in refusing to recognize the sublease for income tax purposes and in taxing all of the income from the operation of the theater for 1943 to Plaza. Cf. *Gregory* v. *Helvering*, 293 U. S. 465; *Higgins* v. *Smith*, 308 U. S. 473; *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436; *Stanwicks, Inc.*, 15 T. C. 556. None of the circumstances shown by the record which are favorable to the petitioner's contention have been overlooked in reaching this conclusion. These include the facts that the lease was actually entered into; the operation in form was in the name of Jeannette; she took an interest in the operation of the theater and gave it some of her time; in form at least, she assumed some of the risks and responsibilities; and, perhaps most significant of all, she actually received the net income as her own and used it without restriction for her own purposes. The latter fact need not be controlling where, as here, Brecher, the principal stockholder, and his two children were content

to allow Jeannette to have this particular money under their close family relationship, which money otherwise would have been used largely in the payment of corporate taxes. Jeannette argues against taxing the amount to her as a dividend if it is to be regarded as income of Plaza. No such dividend was declared, of course, and it was not distributed pro rata. Nevertheless, she received and used the money and it can be a dividend for tax purposes. *Lincoln National Bank* v. *Burnet*, 63 Fed. (2d) 131, affirming 23 B. T. A. 1304; *Cleveland Shopping News Co.* v. *Routzahn*, 89 Fed. (2d) 902; *Peoples Gin Co.* v. *Commissioner*, 118 Fed. (2d) 72, affirming 41 B. T. A. 343; *Speier* v. *United States*, 9 Fed. Supp. 1020. Jeannette makes no separate argument in regard to the earned income credit which certainly falls to $300 if she is not regarded as the operator of the theater.

The fifth issue brings up a rather odd situation. Plaza claimed a deduction on its return for 1943 of $6,500 as salary for Brecher. The Commissioner considered that the $6,000 paid him by Jeannette should be added to the $6,500 paid him by Plaza and recognized as a claim for a deduction of $12,500. He allowed a deduction of $7,500 which is more than the petitioner claimed on its return or in its petition. Since the petitioner is not claiming a deduction in excess of that allowed, there is no issue for decision.

The sixth issue is whether Brecher is entitled to a deduction of $15,833.33 for 1943 representing payments made by him in that year in settlement of litigation instituted by his sister-in-law. The Commissioner gave no explanation in the notice of deficiency justifying his action in disallowing this deduction. The evidence clearly shows that it was a loss and it resulted from the termination at an unfavorable time of a transaction entered into by Brecher for profit. He was on a cash basis and the loss was sustained for tax purposes as he made actual payments of the amount which he agreed to pay in settlement of the litigation. The petitioner also claims an additional $1,750 paid in 1940 as a loss in 1943, but has failed to show that that amount was not lost when the arrangement was terminated in 1940. It was not mentioned in the 1943 settlement.

The $500 involved in the next issue, representing legal fees paid in 1942 in resisting a suit, was deductible in that year either as a nonbusiness expense under section 23 (a) (2) or as a loss under section 23 (e) (2).

The eighth issue has to do with Plaza's excess profits tax credit for 1942 and 1943. The proof on this issue is so inadequate that the Court is not justified in making findings of fact which would either bring the issue into focus or enable a proper decision to be made. The petitioner says that it deducted for New York State franchise taxes in 1936, 1937, and 1939 on the basis of payments, whereas it should have made the deductions on the basis of accruals. The Court has not been

informed of the facts in regard to the taxes so that it could determine when they accrued or in what amounts they accrued. The petitioner further claims that it had abnormal deductions for interest in 1937 and in computing the abnormality under section. 711 (b) (1) (J) interest on tax deficiencies should be classified separately from interest on loans. Here again the facts have not been proven adequately. The evidence relied upon is some schedules prepared by an accountant and introduced in evidence without objection. The schedules might be regarded as proper proof of some of the figures but figures alone are insufficient. The schedules are somewhat inconsistent with the claims made. The Court would have to know more of the facts which led to the figures. No change in the determination of the Commissioner as to the excess profits tax credit can be made on the basis of the record.

The final issue is whether Jeannette is entitled to credits for two dependents under section 25 (b) (2) (A). Counsel for the Commissioner ignored this point on cross-examination and in his brief, from which we may infer that he has nothing to suggest in opposition to the claim. A finding has been made showing that the petitioner is entitled to the two credits.

*Decisions will be entered under Rule 50.*