**58TH ST. PLAZA THEATRE, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

**BRECHER v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 142, 143, Dockets 22173, 22174.

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1952.

Decided March 18, 1952.

11. See footnote 9.

Pack & Strumpf, and Shearman & Sterling & Wright, New York City (Howard D. Pack and Paul R. Russell, New York City, of counsel), for petitioners.

Ellis N. Slack and Melva M. Graney, Washington, D. C., for respondent.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

There is little to add to what the Tax Court has said. That Court found, on ample evidence, that a family-held corporation entered into a sub-lease to one of the stockholders at a rental very substantially less than the profits which, absent the sub-lease, there was every reason to believe the corporation would earn. The sub-lease involved no legitimate business purpose, for, in this context, avoidance of taxes is not included in that category. We have recently summarized the applicable doctrine in Kocin v. United States, 2 Cir., 187 F.2d 707, 708, where (after noting that that doctrine finds general expression in Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, we said that the partnership there in question served no business purpose, and added:[1] "In keeping with the decisions, it could be called a 'sham,' a 'disguise,' a 'masquerade,' a 'fiction,' a 'subterfuge,' a 'make-believe,' a 'mere pretense,' a 'mask,' a 'screen,' a 'veil,' an 'artifice,' a 'ruse,' or other names, supplied by the dictionary, which indicate that it does not succeed as an insulator of the corporation from tax liability." See also, e. g., Palace Theatre v. United States, 7 Cir., 148 F.2d 30; Limericks, Inc. v. C.I.R., 5 Cir., 165 F.2d 483; Ingle Coal Corp. v. Commissioner, 7 Cir., 174 F.2d 569; Home Furniture Co. v. Commissioner, 4 Cir., 168 F.2d 312. The income Jeannette Brecher received via the sub-lease was taxable as dividends from the corporation, dispite the fact that proportionate dividends were not paid to the other stockholders. Regensburg v. Com-

missioner, 2 Cir., 144 F.2d 41; certiorari denied 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; also Cleveland Shopping News Co. v. Routzahn, 6 Cir., 89 F.2d 902.

The taxpayers cite Goold v. Commissioner, 9 Cir., 182 F.2d 573, 575, to the effect that whether or not a transaction "was an improvident transaction, is not of the business of the tax collector." There, however, the court—distinguishing such cases as Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981, and United States v. Cumberland Public Service Company, 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, which referred to "mere formalities designed 'to make the transaction appear to be other than what it was,' in order to avoid tax liability"—underscored the fact that "the Tax Court made no finding in form or effect that the transfer from father to son was by way of avoidance of tax liability." But here the Tax Court explicitly found that "prospective tax savings" constituted the purpose of the transaction, and that "The sublease from Plaza to Jeannette served no business purpose of Plaza but was a family arrangement to give Jeannette increased income at the expense of Plaza and without payment of taxes thereon by Plaza." In reaching that finding, the Tax Court properly took into account the following: "The operation of the theater during 1942 had been successful. It was benefitting from the stimulus of the war. The prospects on December 29, 1942 for increased earnings were good. The lease was for five years with provisions for renewals. Plaza reported net income of about $16,000 for 1942, most of which must have come from the operation of this theater * * *. The maximum gross income above the rental to Reade which Plaza could receive from the sublease was $25,000. It would have to offset against that its annual deduction for depreciation on the lease in the amount of $11,428.56, perhaps other depreciation deductions on equipment of the theatre, and $5,000 of the salary of Brecher which it intended to pay him in addition to the salary paid him for the management of the other theater.

1. The argument based on Leo Brecher's debt to Anna Brecher is untenable. For, all else aside, he had more than adequate assets, in addition to his theatre company stock, to pay off any judgment she might obtain against him.

Those deductions would reduce the gross income of $25,000 to net income of about $8,500. Plaza, at the time of the execution of the sublease, could anticipate the loss of a large part of the profits reasonably in prospect from its own operation of the theater. It actually reported net income of only $7,965.33 for 1943. The sublease was obviously bad business for Plaza and Brecher and Jeannette knew it better that anyone. They knew that the income of Plaza was subject to excess profits tax whereas any income of Jeannette would not be. They also knew that Jeannette had very little income of her own, whereas Brecher had substantial income. The prospective tax saving in the arrangement is too obvious to be overlooked as is the rearrangement of income in an intimate family group. Motives other than the best interest of Plaza motivated the sublease to Jeannette. The sublease was terminated at sometime in 1944 not shown by the record, under circumstances not shown by the record, which Brecher said he was not prepared to go into when he was questioned about them on cross-examination." [2]

It is suggested that the decision would have been correct if it had treated the income which the wife derived from the theatre as if it had been received by the stockholders (i. e., the husband, wife and the children) and taxed it to them, but that the decision erroneously treated it as if it had been received by the corporation and then distributed as dividends since this results in "double taxation." But to accept that suggestion would be to ignore the corporation for the benefit, vis a vis taxes, of persons who deliberately chose the corporate device. All the decisions on the subject oppose such a decision.

Affirmed.

SWAN, Circuit Judge (dissenting).

The petitioner was assignee of a lease of a moving picture theatre. Its president and controlling stockholder caused the corporation to make a five year sublease of the theatre property to his wife. The corporation's license to operate the theatre was surrendered by it and a license was issued by the municipality to the wife. Operation of the theatre was conducted in the wife's name; rent under the sublease and all other expenses were paid by her and she deposited in her own bank account all receipts. She reported net income of $40,000 from the business and paid the federal income tax thereon. The petitioner operated another moving picture theatre and filed an income tax return. The Tax Court held that the $40,000 reported by the wife should be added to the corporation's net income and should also be taxed to the wife as a dividend received by her.

If the taxing officials had held that the wife was merely her husband's agent and had taxed to him, or to him and his children (the other stockholders of the corporation) the income the wife received from operating the theatre, I could understand the decision and should not disagree with it. But to ascribe the income to the corporation, whose only relation to the business in 1943 was that of sublessor of the building

---

**2.** The Tax Court continued: "The Commissioner was justified in refusing to recognize the sublease for income tax purposes and in taxing all of the income from the operation of the theater for 1943 to Plaza. Cf. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Moline Properties, Inc., v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Stanwicks, Inc., 15 T.C. 556. None of the circumstances shown by the record which are favorable to the petitioner's contention have been overlooked in reaching this conclusion. These include the facts that the lease was actually entered into; the operation in form was in the name of Jeannette; she took an interest in the operation of the theater and gave it some of her time; in form at least, she assumed some of the risks and responsibilities; and, perhaps most significant of all, she actually received the net income as her own and used it without restriction for her own purposes. The latter fact need not be controlling where, as here, Brecher, the principal stockholder, and his two children were content to allow Jeannette to have this particular money under their close family relationship, which money otherwise would have been used largely in the payment of corporate taxes."

in which the sublessee operated the theatre, seems to me to carry too far the rapacity of tax-gatherers. The sublease created valid legal relations which the parties thereto intended should be carried out, and they were. Whether the sublease was "an improvident transaction, is not of the business of the tax collector." Goold v. Commissioner, 9 Cir., 182 F.2d 573, 575. That the rental was less than might have been obtained in a transaction between parties dealing at arm's length is not enough in my opinion, to make the sublease a "sham" transaction. Nor is the fact that it was motivated by a desire on the part of the controlling stockholder to avoid corporate income taxes. The present decision, at least by implication, seems to mean that once a man starts doing business in corporate form, he may not discontinue it and resume operations in his own name, or that of his nominee, so far as federal taxes are concerned. I think this goes further than previous decisions of the Tax Court. I would reverse it.