**NICKERSON LUMBER COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 60–155.

United States District Court
D. Massachusetts.

Feb. 8, 1963.

Gerald T. O'Hara, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., R. Michael Duncan, U. S. Dept. of Justice, Washington, D. C., for defendant.

JULIAN, District Judge.

The plaintiff, Nickerson Lumber Company, brings this action under 28 U.S.C. § 1346(a) (1) to recover $23,944.75 which it claims was erroneously assessed and collected as income taxes for the years 1954, 1955, and 1956.

The issue presented is whether certain payments made by the plaintiff to the heirs, who are also children, of its deceased founder, Oscar C. Nickerson, are deductible business expenses as contended by the plaintiff, or were nondeductible dividends as determined by the Commissioner of Internal Revenue.

The plaintiff is a Massachusetts corporation organized in 1920 as the successor to a sole proprietorship of Oscar C. Nickerson founded in 1895. It is engaged in the business of selling lumber and building materials and has its principal place of business in Orleans, Massachusetts.

Oscar C. Nickerson was the corporation's first president and served in that capacity until 1950, when he became chairman of its board of directors. He was succeeded as president by his son Joshua.

On December 28, 1934, there were outstanding 730 shares of the company's common stock. Of these, 455 were owned by Oscar C. Nickerson and 275 by Joshua. On that date there was created the Nickerson Lumber Company Management Trust with Oscar and two of his sons, Joshua and Lawrence, as trustees. Lawrence was later replaced by Ernest, another son. Oscar and Joshua transferred all their shares to the trust. The trust instrument provided that the trust would terminate upon the death of Oscar. Upon termination of the trust Joshua's 275 shares would be returned to him, if living, and Oscar's 455 shares would be distributed to Oscar's executors. The trust instrument contained provisions giving Oscar's children, other than Joshua, the option to take preferred stock on termination of the trust if Joshua was then living, and allowing the trustees to delay distribution so as to enable them to consummate the conversion to preferred stock, but in no event was distribution to be delayed more than 12 months after termination of the trust.

On the same date that the trust was created (December 28, 1934) Oscar made his will which provided that his 455 shares were to be divided equally among his children, including Joshua.

Oscar C. Nickerson died on January 19, 1954, at the age of 88, leaving five children, all adults, namely, four sons, Joshua, Lawrence, Ernest, and Ivan, and one daughter, Mora Nickerson Creesy.

At the time of his death Oscar held the office of chairman of the board of directors at an annual salary of $15,000. There was no evidence of the nature and extent of the services rendered to the corporation by the decedent as chairman of its board of directors or of the probable value of such services.

On April 3, 1954, the stockholders of the Nickerson Lumber Company met at the residence of Joshua A. Nickerson. Present were Joshua and Ernest, trustees, representing all of the outstanding stock of the company. By invitation, Mora, Lawrence, and Ivan were also present at this meeting. All the children were aware of the terms of the trust. The following resolution was adopted:

"RESOLVED, that we here record the death of our father, Oscar C. Nickerson, at Clearwater, Florida, on January 19th, 1954, in the 88th year of his life, and that in lieu of more formal resolutions we here and now acknowledge our great debt to him and our mother, Eglantine F. (Young) Nickerson, for

their sacrifices and efforts, particularly in the early years of this business which they began in 1895, which have redownded [sic] to our benefit."

A meeting of the board of directors of the company was held immediately following the stockholders' meeting. All three directors, namely, Mora, Ernest, and Joshua, were present. The following votes were adopted:

"*VOTED*: that since the salary of the late Oscar C. Nickerson has been paid only through the month of January, 1954, therefore a total sum of $1,250 per month to be paid in equal shares to each of his five children for a reasonable, limited period beginning with February, 1954.

\* \* \* \* \* \*

"*VOTED*: that the Treasurer is hereby authorized and instructed, under the foregoing vote, to pay to each of the five children of the last [sic] Oscar C. Nickerson (namely, Lawrence C. Nickerson, Mora E. Creesy, Joshua A. Nickerson, Ivan Y. Nickerson and Ernest C. Nickerson) $250 per month, retroactive to February 1, 1954, reserving the privilege of any child who may so choose to defer the actual receipt of any or all of his monthly shares until 1955; and the Treasurer is further instructed to continue such payments through the month of December 1954 (making eleven monthly payments in all under this vote), after which further consideration may be given to the subject by this Board of Directors."

Pursuant to the vote of April 3, 1954, the company paid $2,750 to each of the decedent's children during the year 1954, or a total of $13,750.

In 1954 Mora and Lawrence (as executors under the will of Oscar C. Nickerson), Joshua and Ernest (as trustees of the trust), and Mora, Lawrence, Ivan, and Ernest executed an agreement extending the 12-month period provided in the instrument creating the Nickerson Lumber Company Management Trust (which would otherwise have expired in January, 1955) to January 1, 1958. In 1957 the same parties executed an agreement further extending the time for distribution of trust assets to July 1, 1958.

On February 5, 1955, another meeting of the board of directors was held. The board then consisted of four directors, Joshua, Ernest, Mora, and a non-member of the family. All four were present at the meeting. The board voted "to continue through the year 1955 the payments to the heirs of Oscar C. Nickerson as stated in the meeting of April 3, 1954." Pursuant to this vote, the company during 1955 paid $3,000 to each child of Oscar C. Nickerson, for a total amount of $15,000.

The board of directors met again on January 14, 1956. All the directors except Mora were present. The board voted to continue the payments to the heirs of Oscar C. Nickerson "in accordance with action previously taken on April 3, 1954, and February 5, 1955," until its next meeting, at which time the matter "was to be given further consideration." During 1956, pursuant to this vote, the company paid $2,000 to each child of the decedent, for a total amount of $10,000.

A special meeting of the board of directors was held on August 22, 1956, with all the directors present. It was voted that the payments be terminated with the payment for the month of August, 1956.

All payments to the heirs of Oscar C. Nickerson made pursuant to foregoing votes of the directors were entered in the books of account of the company as "miscellaneous general expenses."

Except for the statement contained in the vote of April 3, 1954, that the salary of the late Oscar C. Nickerson (who had died on January 19, 1954) had been paid only through the month of January, 1954, no reason is given in the minutes of stockholders' or directors' meetings, or elsewhere in the corporate records,

for making the payments in question to the decedent's children.

I do not find the contents of the resolution adopted at the shareholders' meeting on April 3, 1954, to be the reason for the payments subsequently voted by the director-children to themselves and the other children. The resolution was an acknowledgment by the children of their indebtedness to their parents for the benefits that had accrued to them from their parents' efforts and sacrifices. I am not persuaded that the decedent had been inadequately compensated during his lifetime for the services he had rendered to the corporation or that the payments were in the nature of posthumous compensation for such services.

On January 7, 1955, the trustees of the Management Trust distributed all of the shares of stock held by the trust. Joshua (or his wife and son as his donees) received his 275 shares. The 455 shares originally transferred to the trust by the decedent were transferred to the executors under his will. The executors immediately transferred 91 shares each to the decedent's five children, including Joshua.

The accumulated earned surplus and profits of the corporation as of the close of each of the years 1954, 1955, and 1956 exceeded $500,000. The corporation had never declared or paid any dividends unless the payments here in issue constituted dividends.

The payments made pursuant to the votes of April 3, 1954, February 5, 1955,

and January 14, 1956, totalling $38,750, were deducted by the company as business expenses in its income tax returns for those years. On audit the Commissioner of Internal Revenue disallowed the claimed deductions and the resulting deficiencies were assessed against and collected from the company. The plaintiff made timely claims for refund contesting the disallowance of the deductions. The claims were rejected and this action was thereafter brought within the time prescribed by law.

■ It is well established that an income tax deduction is a matter of legislative grace and that the burden of showing the right to the claimed deduction is upon the taxpayer. Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L. Ed. 1348; Kemper v. Commissioner, 8 Cir., 1959, 269 F.2d 184, 189; Weible v. United States, 9 Cir., 1957, 244 F.2d 158, 162; cf. State Mutual Life Assurance Co. v. Commissioner, 1 Cir., 1957, 246 F.2d 319, 322.

■ The plaintiff claims that the payments made to the decedent's five children were deductible business expenses under section 404(a) of the 1954 Internal Revenue Code.[1] Under that section compensation paid on account of an employee is deductible only if it is paid under a plan deferring its receipt and only if such compensation satisfies the conditions of section 162 of the 1954 Code.[2]

[1]. "§ 404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan

"(a) General rule.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of an employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of

such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

\*  \*  \*  \*  \*

"(5) Other plans.—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid."

[2]. "§ 162. Trade or business expense

"(a) In general.—There shall be allowed as a deduction all the ordinary

■ I find that the plaintiff had no deferred compensation plan for its employees and that the payments here in question were not made pursuant to any such plan.[3] I find further that the payments fail to satisfy the conditions of section 162 in that they were not made as compensation for personal services actually rendered by the decedent to the corporation. Therefore, the taxpayer has failed to sustain its burden of showing that the payments in question fall within the terms of the statute.

■ This result is not changed by the taxpayer's attempt to avail itself of § 29.23(a)–9 [4] of Regulations 111 promulgated under § 23 of the 1939 Code. If it be assumed in the plaintiff's favor that § 29.23(a)–9 was not inconsistent with the provisions of the 1954 Code and therefore remained in effect until 1958 in accordance with Treasury Decision 6091,[5] nevertheless the payments do not fall within the scope of the regulation since the plaintiff has failed to prove that they were made to the decedent's heirs "in recognition of services rendered" by the decedent to the corporation.

■ It is the position of the government that the payments in question constituted dividends paid to the plaintiff's stockholders. The Revenue Code provides, in effect, that every distribution out of earnings and profits made to shareholders with respect to stock constitutes a dividend.[6]

■ ■ After the death of Oscar C. Nickerson, his children became the bene-

and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—
"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered."

3. It should be noted that § 404(a) does not contain any provision comparable to the provision found in § 23(p) (1) (F) of the 1939 Code which states:
"If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or a similar plan deferring the receipt of compensation, this paragraph shall apply as if there were such a plan."

4. § 29.23(a)–9 of Regulations 111 under § 23 of the 1939 Code provided:
"When the amount of salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of services rendered by the individual, such payments may be deducted."

5. Treasury Decision 6091, 19 F.R. 5167, August 17, 1954, provided that all regulations in effect under the 1939 Code should remain in effect, if not inconsistent with the 1954 Code, until superseded by new regulations. The superseding regulations were not promulgated until April 3, 1958 (T.D. 6291).

6. "§ 316. Dividend defined
"(a) General rule.—For purposes of this subtitle, the term 'dividend' means any distribution of property made by a corporation to its shareholders—

"(1) out of its earnings and profits accumulated after February 28, 1913, or
"(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.
Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.
* * * * *
"§ 301. Distributions of property
"(a) In general.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
* * * * *
"(c) Amount taxable.—In the case of a distribution to which subsection (a) applies—
"(1) Amount constituting dividend.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income."

ficial owners of all the outstanding stock of the corporation. Furthermore, the corporation in each of the tax years had earnings and profits in excess of the amounts distributed. I find that the distributions to the children were made to them because they were the owners of the stock of the corporation and are therefore dividends. A dividend is no less a dividend because it is not distributed pro rata among the shareholders. For tax purposes a pro rata distribution is not required. See Lengsfield v. Commissioner, 5 Cir., 1957, 241 F.2d 508; Regensburg v. Commissioner, 2 Cir., 1944, 144 F.2d 41, cert. den. 323 U.S. 782, 65 S.Ct. 272, 89 L.Ed. 625; 58th St. Plaza Theatre, Inc. v. Commissioner, 1951, 16 T.C. 469, 477; aff'd 2 Cir., 1952, 195 F.2d 724, cert. den. 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638.

■ The fact that the payments were not recorded as dividends on the corporate books is not controlling. The substance of the transaction rather than its form, or the tag attached to it, determines its legal consequences.

"A distribution of earnings by a corporation to its stockholders need not formally be declared as such, need not be distributed pro rata, and need not be so characterized by the corporation." Barbourville Brick Co. v. Commissioner, 1961, 37 T.C. 7, 13.

In Louisville Chair Company v. United States, 6 Cir., 1961, 296 F.2d 621, the court expressly approved the following instructions to the jury:

"If these payments were made to them because they were owners of the business, then the payments are to be treated as dividends or withdrawals of capital even though the payments took the form of compensation.

\*    \*    \*    \*    \*    \*

"A payment by a corporation to a shareholder can in substance be a dividend, even though no dividends were formally declared and even though the payments have been labeled as a bonus or salary."

■ Moreover, as was stated by the court in Heil Beauty Supplies, Inc. v. Commissioner, 8 Cir., 1952, 199 F.2d 193, 194:

"Any payment arrangement between a corporation and a stockholder \*  \*  \* is always subject to close scrutiny for income tax purposes, so that deduction will not be made, as purported salary, rental or the like, of that which is in the realities of the situation an actual distribution of profits."

I hold that the payments in question were nondeductible dividends to the shareholders of the plaintiff corporation and that the Commissioner of Internal Revenue did not err in disallowing the claimed deductions.

Judgment will be entered dismissing the complaint.