H. H. Mink & Son Bag Co., Inc., et al. [1] v. Commissioner.
H.H. Mink & Son Bag Co. v. Commissioner
Docket Nos. 2930-67 - 2932-67.
United States Tax Court
T.C. Memo 1970-177; 1970 Tax Ct. Memo LEXIS 181; 29 T.C.M. (CCH) 778; T.C.M. (RIA) 70177; June 25, 1970. Filed Sydney R. Rubin, 44 Exchange St., Rochester, N. Y., for the petitioners. John E. White, for the respondent. 779 IRWIN
Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent determined deficiencies and additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a) [2] as follows: Docket No.
Petitioner(s)
TaxableYear
Deficiency
Section
Closed as of
6653(a)Addition to
Tax
2930-67
H. H. Mink & Son
6-30-63
$5,580.40
$279.02
Bag Co., Inc.
6-30-64
8,463.54
423.17
2931-67
Hymen H. and Doris
12-31-62
3,634.42
544.03
Mink
12-31-63
3,012.41
150.62
2932-67
Mervyn and Shirley
12-31-62
1,583.87
79.19
Mink
12-31-63
600.30
30.02
*182 Due to certain concessions made by the parties by stipulations and at trial, [3] the issues remaining for decision are as follows: Docket No. 2930-67 1. Whether H. H. Mink & Son Bag Co., Inc. (hereinafter sometimes Mink Bag or petitioner-corporation) during its taxable years ended June 30, 1963, and June 30, 1964, made purchases of merchandise for cash in the amounts of $6,909.80 and $1,622.17, respectively, from the Bleichfeld Bag Company, Inc. (hereinafter sometimes Bleichfeld Bag). *183 2. Whether $329.53, part of the cost of a trip to Florida made by Hymen Mink and which was reimbursed to him during the taxable year ended June 30, 1963, is deductible by Mink Bag as an ordinary and necessary business expense. 3. Whether any part of the alleged deficiency in tax in each year is due to negligence or intentional disregard of rules and regulations. Docket No. 2931-67 4. Whether part of the cost of a Florida trip ($329.53) made by petitioner Hymen Mink (hereinafter sometimes Hymen) and paid for by Mink Bag during 1963 constitutes a distribution of dividends to Hymen Mink. 5. Whether petitioner Hymen made cash withdrawals in the amounts of $2,468.90 and $3,404.36 [4] from Mink Bag during the calendar years 1962 and 1963, respectively; and, if answered affirmatively, whether these withdrawals constitute dividends to Hymen in those years. 6. Whether Hymen's use during 1962 and 1963 of a car owned by Mink Bag was *184 personal, and if so, whether the fair market value of the use of the car should be included in his gross income as additional compensation for each year at issue. 7. Whether the partnership H. H. Mink & Son Bag Co. (hereinafter sometimes the partnership), in which Hymen had a 50 percent interest, purchased during the first six months of 1962 for $7,011.30 in cash certain merchandise from Bleichfeld Bag. 8. Whether a car owned by the partnership was used by the partner during the first six months of 1962 for the conduct of personal affairs. 9. Whether any part of the alleged underpayment of tax in each year is due to negligence or intentional disregard of rules and regulations. 780
Docket No. 2932-67 10. Whether petitioner Mervyn Mink (hereinafter sometimes Mervyn) made cash withdrawals in the amounts of $1,111.40 [5] and $1,305 from Mink Bag during the calendar years 1962 and 1963, respectively; and, if answered in the affirmative, whether these withdrawals constitute dividends to Mervyn during those years. 11. Whether the partnership, in which Mervyn *185 had a 50 percent interest, purchased for $7,011.30 in cash certain merchandise from Bleichfeld Bag during the first six months of 1962. 12. Whether any part of the alleged deficiency in tax in each year is due to negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated and are found accordingly. The facts reflected in the exhibits are incorporated herein by reference. H. H. Mink & Son Bag Co., Inc., timely filed U.S. corporation income tax returns for the taxable years ended June 30, 1963, and June 30, 1964, with the district director of internal revenue, Buffalo, N. Y. At the time it filed the petition herein, the principal office and place of business of petitioner-corporation was located in Rochester, N. Y. Petitioners Mervyn Mink and Shirley Mink, [6] husband and wife, filed joint U.S. individual income tax returns for the taxable years 1962 and 1963 with the district director of internal revenue, Buffalo, N. Y. At the time of the filing of the petition herein, they resided in Rochester, N. Y. Benjamin Lipson, an accountant, prepared all income tax returns for petitioners for the periods here involved. *186 Mervyn Mink is Hymen's son. Through June 30, 1962, Hymen and Mervyn were equal partners in H. H. Mink & Son Bag Co., a partnership with its principal office and place of business in the City of Rochester, N. Y. The partnership filed a U.S. partnership return of income for the year 1962, with the district director of internal revenue, Buffalo, N. Y. Said return reflected the operation of the business from January 1, 1962, through June 30, 1962. Effective July 1, 1962, the assets of the partnership were transferred to petitioner-corporation, which thereafter carried on the business formerly conducted by the partnership. Throughout the fiscal years ended June 30, 1963, and June 30, 1964, all the issued and outstanding shares of capital stock in Mink Bag were owned as follows: Hymen H. Mink
50 shares
Mervyn Mink
50 shares
Moreover, Mervyn and Hymen were the principal officers of Mink Bag, while Howard Weinstein, Hymen's son-in-law, served as plant manager of petitioner-corporation. Both the partnership and Mink Bag kept their books of account and filed their Federal tax returns on the accrual basis of accounting. Hymen, who was born in Russia in 1901, has only *187 a third grade education. He founded the business which subsequently became H. H. Mink & Son Bag Co., Inc., in approximately 1917 when he started peddling rags and papers to rag houses. In the type of business in which Hymen was engaged, merchandise was commonly bought and sold for cash. During the period from January 1, 1962, through June 30, 1964, both the partnership and Mink Bag did business with Bleichfeld Bag Co., Inc., a corporation with its principal place of business in Buffalo, N. Y. Bleichfield Bag was organized in about 1955 or 1956 by three brothers, Jacob Bleichfeld (sometimes referred to as Jack and hereinafter sometimes referred to as Jacob), Sol Bleichfeld, and Emmanuel Bleichfeld. During the years at issue, Bleichfeld Bag engaged primarily in the processing, reconditioning and sale of burlap bags. During the years 1962 and 1963 Bleichfeld Bag purchased and had on hand a quantity 781 of "saxoline," a woven paper material. The saxoline was bought in rolls, some of which was automatically cut and converted by Bleichfeld Bag into cabbage or onion bags, commonly known in the paper and bag industry as misprint bags. Bleichfeld Bag also purchased some used onion and *188 cabbage bags during this same period. Hymen Mink had been acquainted with the three Bleichfeld brothers for approximately 15 years at the time of the trial. Frequently, transactions between Mink Bag and Bleichfeld Bag were arranged via the telephone. Hymen dealt almost exclusively with Jacob Bleichfeld when the two companies were transacting business. The two spoke often on the telephone and saw each other from time to time when Hymen delivered merchandise to Bleichfeld Bag. Bleichfeld Bag purchased $34,638.99 worth of merchandise during the period January 1, 1962, to June 30, 1964, from the petitioner-corporation and the predecessor partnership. Sometime near the close of calendar year 1961, Hymen Mink was approached by Jacob Bleichfeld who offered to sell the Mink enterprise approximately 7,500 misprint onion and cabbage bags that had been made out of saxoline. Hymen first investigated whether there was a market for such bags among the local growers near Elba, N. Y. Upon finding that there was, he agreed to buy the bags, and he also agreed to the condition imposed by Jacob that all purchases by the Mink enterprise of misprint bags from Bleichfeld Bag were to be paid for in *189 cash. During the period January 1, 1962, to June 30, 1964, the partnership and subsequently petitioner-corporation continued to purchase the misprint bags for cash from Bleichfeld Bag. This practice of cash purchases also extended to the purchase of corrugated boxes. However, Jacob refused to issue any type of receipt or invoice to evidence these cash purchases, and he even warned the buyers not to enter these cash transactions into the Mink enterprise's records. Robert Van Hall (hereinafter Van Hall) was employed as a truck driver by Mink Bag and the partnership from May 1961 through May 1966. During the years 1962 and 1963, Van Hall drove to Bleichfeld Bag an average of six or seven times a month, usually for the purpose of delivering merchandise there. More often than not, he would also pick up merchandise at Bleichfeld Bag, which petitioner-corporation or the partnership had purchased. This merchandise ranged from all types of bags, including misprint onion and cabbage bags, to corrugated cartons. Usually Van Hall would bring this merchandise from Bleichfeld Bag back to his employer's place of business, but occasionally he delivered bags directly to one or two onion and potato *190 growers in Elba, N. Y.
Van Hall never received invoices or bills of lading from Jacob Bleichfeld when he picked up merchandise at Bleichfeld Bag. However, he was able to obtain invoices from the other two Bleichfeld brothers when Jacob was not at Bleichfeld Bag's place of business in Buffalo. The sales represented by these invoices were made between February 1963 and May 1963, during which time Jacob was either hospitalized or convalescing at home from an illness. The sales totaled $842 and consisted entirely of burlap or paper bags, but no saxoline or misprint bags. This invoiced merchandise was paid for by the Mink firm's checks, except for one purchase of $255 which was offset against certain sales to Bleichfeld Bag by Mink Bag. Generally, it was Hymen who made the cash payments to Jacob with respect to the cash purchases in question. When Hymen was on vacation, Mervyn Mink transmitted the cash to Jacob. This occurred upon approximately six or seven occasions during 1962 and 1963. Upon two or three occasions during this same period, Howard Weinstein picked up onion bags and corrugated boxes at Bleichfeld Bag, and once he delivered cash to Bleichfeld Bag as payment toward merchandise *191 purchase there-from. A personal file for Hymen was kept by the Mink enterprise which contained memoranda relating to transactions in which he made payments with his own funds for cash purchases and was later reimbursed by Mink Bag or the partnership. These memoranda, for the most part, indicated the type of merchandise purchased for cash, the unit price, quantity, and total price. These memoranda, as well as check stubs relating thereto, were placed into evidence at the trial. Other memoranda relating to checks payable to cash had been misplaced or lost prior to the time of the trial herein. However, check stubs of petitioner-corporation and the predecessor partnership, with respect to these checks payable to cash and which indicated the amounts paid to Bleichfeld Bag, were introduced into evidence. Although petitioner-corporation and the predecessor partnership purchased 782 merchandise for cash from firms other than Bleichfeld Bag during the period at issue, only the purchases from Bleichfeld Bag were disallowed by respondent. In determining the deficiencies herein, respondent reduced the cost of goods sold of the partnership and petitioner-corporation by the amounts of *192 said alleged cash purchases from Bleichfeld Bag. As a result, the partnership income was increased, and this increase in income was determined by respondent to constitute additional income to the two equal partners - Hymen and Mervyn. Respondent also determined that the amounts of said alleged cash purchases by Mink Bag from Bleichfeld Bag constituted dividends to Hymen and Mervyn. The following is respondent's computation of dividend income and partnership income resulting from his adjustments to purchase deductions: Date
Check
Name of Drawer
Amount
Dividend Income
of Check
No.
Disallowed
Hymen
Mervyn
1-25-62
7050
Partnership
$1,767.00
2- 9-62
7135
Partnership
1,222.90
4- 9-62
7482
Partnership
2,305.70
6- 1-62
7737
Partnership
1,615.70
6-30-62
7905
Partnership
100.00
$7,011.30 [7]
8- 6-62
132
Mink Bag
$2,222.80
$1,111.40
$1,111.40
9- 6-62
283
Mink Bag
250.00
250.00
10-18-62
528
Mink Bag
635.00
317.50
317.50
10-30-62
608
Mink Bag
270.00
270.00
12-10-62
795
Mink Bag
220.00
220.00
12-21-62
883
Mink Bag
300.00
300.00
$3,897.80 [8]
$2,468.90
$1,428.90
1- 2-63
928
Mink Bag
$ 655.00
$ 655.00
1-28-63
1047
Mink Bag
600.00
$300.00
300.00
1-28-63
1118
Mink Bag
640.00
640.00
3- 8-63
1293
Mink Bag
700.00
350.00
350.00
6-14-63
1850
Mink Bag
417.00
417.00
$3,012.00 [8]
$1,707.00
$1,305.00
7-30-63
2075
Mink Bag
$ 333.75
$ 333.75
9-25-63
2311
Mink Bag
370.00
370.00
10-14-63
2454
Mink Bag
267.00
267.00
10-28-63
2542
Mink Bag
55.00
55.00
11-15-63
2643
Mink Bag
160.00
160.00
12- 6-63
2738
Mink Bag
280.00
280.00
12-27-63
2795
Mink Bag
156.42
156.42
$1,622.17 [9]
$1,622.17
*193 During the years 1962 and 1963, Hymen did not personally own an automobile. However, he had available for both business and personal use a car owned either by the partnership or Mink Bag. Hymen Mink's doctor advised him to start using a car rather than a truck while making deliveries and pickups for petitioner-corporation. Thereafter, Hymen began to drive a Chevrolet station wagon which was owned by petitioner-corporation. During the work week, Hymen commuted to work in this car and used it primarily for business. On week nights and weekends the station wagon was used for Hymen's personal affairs, and it was this car which he drove to Miami Beach where he vacationed for several weeks in the early part of 1963. Mervyn Mink did not use the station wagon during the period involved. No records as to maintenance costs or mileage were kept by petitioners *194 with 783 respect to the car that Hymen drove during the period involved herein. During 1963, petitioner-corporation allegedly purchased liquor in Florida costing $75.19 for later distribution to customers. Sometime in February 1963, Hymen traveled to Miami Beach for a vacation and did not return until April 1963. Petitioner-corporation in its fiscal year ended June 30, 1963, reimbursed Hymen $329.53 for some of the expenses incurred on the Florida trip. Both the liquor purchases and the expenses of the Florida trip were disallowed by respondent as not being ordinary and necessary expenses of petitioner-corporation and were treated as taxable dividend income to Hymen. Opinion During the first six months of 1962, petitioners, Hymen and Mervyn Mink, were equal partners in the H. H. Mink & Son Bag Co. On its return for this period, the partnership reported a deduction in the amount of $7,011.30 for the cost of bags and cartons which were allegedly purchased for cash from the Bleichfeld Bag Co., Inc. A successor corporation, H. H. Mink & Son Bag Co., Inc., was formed on July 1, 1962, and it also claimed deductions for the cost of merchandise allegedly purchased for cash from Bleichfeld *195 Bag during its taxable year ended June 30, 1963, and June 30, 1964, in the amounts of $6,909.80 and $1,622.17, respectively. Respondent increased Hymen's and Mervyn's distributive share of the partnership income by the amount of the alleged cash purchases from Bleichfeld Bag and disallowed the deduction claimed by petitioner-corporation in each year with respect to the cost of the alleged cash purchases. This latter amount was treated as dividend income to Hymen and Mervyn. Hymen did not own a car during the years 1962 and 1963. However, he had available for either business or personal use a car owned either by the partnership or by petitioner-corporation. The partnership reported a deduction [10] for the cost of operating the car driven by Hymen, which cost respondent maintains was a personal living expense and not an ordinary and necessary business expense. Respondent contends that the partnership income for the first six months of 1962 should be increased by the amount of the fair rental value of the car, and that Hymen received additional income from petitioner-corporation in each of the calendar years 1962 and 1963 because of the unlimited personal use of the car owned by Mink *196 Bag during that period. Hymen traveled on vacation to Florida sometime in February 1963 and did not return until April 1963. Petitioner-corporation deducted $329.53, a part of the cost of this Florida trip which it had reimbursed to Hymen, on its tax return for the taxable year ended June 30, 1963. Respondent disallowed this deduction as not being an ordinary and necessary expense and allocated the amount deducted to Hymen as the distribution of a dividend. Respondent also included as a dividend to Hymen the cost ($75.19) of liquor purchased by petitioner-corporation allegedly for distribution as gifts to customers. 1. Cost of Goods Sold Since most of the issues in this case are subsidiary to the issue of whether the Mink enterprise made cash purchases of merchandise from the Bleichfeld Bag Co., Inc., during the periods involved herein, we shall first direct our attention to that question. We feel it appropriate to note at the outset that we find no merit in petitioners' contention that respondent's disallowance of these cash purchases was arbitrary and capricious. Respondent acted reasonably *197 in disallowing those purchases for cash which were substantial in amount and not carefully or adequately documented. This alone is not to say, however, that the statutory notices are, in fact, correct. With this in mind, we will proceed to our discussion of these disallowed cash purchases. The partnership and petitioner-corporation reported the alleged cost of the merchandise purchased for cash from Bleichfeld Bag as part of the cost of goods sold and claimed deductions therefor. Respondent disallowed these claimed deductions on the ground that petitioners failed to substantiate that such purchases were in fact made. It is noted that cash purchases from sources other than Bleichfeld Bag were allowed by respondent. Respondent contends that petitioners have not sustained their burden of proving that any merchandise was purchased for cash from Bleichfeld Bag during the period at issue. He asserts that the only evidence in support of petitioners, other than some self-serving memoranda and documents, is 784 the "vague, ambiguous, misleading and ofttimes contradictory" testimony of Hymen and Mervyn. Although Howard Weinstein, Hymen's son-in-law, and Robert Van Hall, both employees *198 of the partnership and petitioner-corporation during the years involved herein, also testified, respondent on brief attempted to discredit their testimony as also vague and, at times, contradictory. Since Hymen and Mervyn are interested witnesses, respondent would have us totally discredit their testimony as self-serving and utterly unworthy of belief. We cannot agree with respondent. We have considered every detail of the record in this case and have exercised great care in evaluating the inconsistencies in some of the details of the testimony of petitioners and their witnesses. However, we are unable to conclude that their testimony is unworthy of belief. It is not within our province to disregard arbitrarily the uncontradicted, unimpeached, competent and relevant testimony of a taxpayer. Banks v. Commissioner, 322 F. 2d 530 (C.A. 8, 1963), reversing and remanding on another issue a Memorandum Opinion of this Court; Jay A. Williams, 28 T.C. 1000 (1957); Arthus N. Blum, 11 T.C. 101 (1948), affd. 183 F. 2d 281 (C.A. 3, 1950). Respondent contends, however, that the testimony of Jacob Bleichfeld denying the cash purchases is affirmative *199 proof casting doubt on the testimony of petitioners and their witnesses. Therefore, he argues, the taxpayers' testimony in this case stands contradicted. We do not accept this contention because we entertain very serious doubts as to the credibility of Jacob Bleichfeld, whose testimony was, to say the least, voluble and evasive. His demeanor in testifying created in us grave misgivings as to his sincerity, and we were left with the distinct impression that he was coloring the material facts to which he testified. See Quock Ting v. United States, 140 U.S. 417 (1891). Having considered all this in determining the weight to be accorded his testimony, we conclude that it is Jacob Bleichfeld who is unworthy of belief. There being no affirmative proof casting doubt on petitioners' testimony, we have carefully weighed the testimony of petitioners and their witnesses, together with the supporting evidence in the record, and we conclude that petitioners have overcome the presumptive correctness of respondent's deficiency notices with regard to cash purchases from Bleichfeld Bag. Arthur N. Blum, supra. Having decided that the partnership and petitioner-corporation did purchase *200 for cash certain merchandise from Bleichfeld Bag, we must now determine the amount of said purchases. A personal file was maintained by the Mink enterprise on transactions in which Hymen used his own cash for purchases and was later reimbursed. Memoranda relating to these cash transactions and reflecting the type of merchandise acquired, the unit price, quantity, and total price were introduced into evidence. These memoranda consisted for the most part of slips of paper upon which the above-mentioned information was jotted down. These slips of paper accounted for only $4,892.07 of the total $15,543.27 in cash purchases which the Mink enterprise made from Bleichfeld Bag during the period beginning January 1, 1962, and ending June 30, 1964. Hymen and Mervyn Mink testified that memoranda reflecting the other cash purchases had been lost or misplaced prior to trial. However, the check stubs relating thereto showed that the payee was Bleichfeld Bag and that the payments were for cash purchases therefrom. We have no reason to doubt their testimony and, in view of the relatively informal manner in which Hymen and Mervyn conducted the affairs of the Mink enterprise, we do not find this explanation *201 so improbable as to warrant our rejecting it. Accordingly, we hold that petitioner-corporation and the predecessor partnership were entitled to deduct the total $15,543.27 in cash purchases which the Mink enterprise made from Bleichfeld Bag during the period beginning January 1, 1962, and ending June 30, 1964. 2. Allocation of Income In view of the fact that we have held above that the petitioners have sustained their burden of proof as to $15,543.27 in purchases which the partnership and petitioner-corporation made from Bleichfeld Bag, it follows that there is no additional income to be allocated to Hymen and Mervyn as a result of these purchases. 3. Miscellaneous Expenses The remaining issues for consideration concern the Florida trip, the liquor purchases and the automobile expenses. 785 a. Florida Trip Petitioner-corporation paid $329.53 during its taxable year ended June 30, 1963, inconnection with a trip which Hymen made to Florida around February 1963. It claimed this amount as an ordinary and necessary business expense under section 162. Hymen testified that he traveled to Florida every year for a vacation and that during his 1963 sojourn he made some *202 business contacts in Florida. He did identify several companies that he contacted while there, but these companies were either already customers of the Mink enterprise or did not become so until several years after the years at issue herein. There was no indication given as to the amount of time involved in making these contacts. Because of the vague testimony on this point, we hold that petitioner-corporation failed to prove how much of the cost of Hymen's trip was attributable to its business, and, therefore, the deduction for this trip is denied. Accordingly, we hold that the cost of the trip ($329.53) represents a constructive dividend to Hymen. See 58 th Street Plaza Theatre, Inc., 16 T.C. 469 (1951), affd. 195 F. 2d 724 (C.A. 2, 1952), certiorari denied 344 U.S. 820 (1952). b. Liquor Purchases Hymen and Mervyn both testified, as did Howard Weinstein, that Hymen purchased liquor from time to time for distribution to customers, usually around holidays. A check stub for check number 936 was introduced into evidence and revealed that the check was payable to "Miller Liquor Store" for "Liquor Xmas Gifts." However, there was no testimony *203 as to this check stub and, except for the coincidence of the amount involved ($75.19), we do not know whether the check stub was for liquor gifts to customers of petitioner-corporation or to friends of Hymen and Mervyn. On the whole, the testimony with respect to the alleged liquor purchases was so general and vague that we are constrained to find that petitioner Hymen has not sustained his burden of proof as to this item, and, therefore, this amount is a constructive dividend to him in 1963. c. Auto Expenses Respondent increased the income of the partnership for the taxable year ended June 30, 1962, in the amount of $870 because of "the personal operation of an automobile by a partner." He then allocated the alleged increased partnership income equally between Hymen and Mervyn. With respect to the last six months of 1962 and all of 1963, respondent increased Hymen's income in the amounts of $870 and $1,740, respectively, on the basis that petitioner-corporation was providing Hymen with an automobile solely for his personal use. Carl Telban, the revenue agent who examined petitioners' returns, testified that, in view of the fact that no records as to maintenance costs or mileage *204 were retained by petitioners, the amount of the additional income was the fair rental value of a car comparable to that used by Hymen and was determined as a result of an inquiry made of an automobile leasing company. Petitioners contend that Hymen used the car owned by the partnership or petitioner-corporation during the period at issue primarily for business use. Upon carefully evaluating the testimony of Hymen and Mervyn with respect to the auto expenses, and bearing in mind that petitioners have the burden of proof with respect to this issue, we find that Hymen's business use of the car constituted 60 percent of the total use thereof during each of the years 1962 and 1963. Accordingly, the partnership income should be increased by $348 for the first six months of 1962, and half of this amount should be allocated to each of the equal partners - Hymen and Mervyn. With respect to the last six months of 1962, Hymen received additional income totaling $348, whereas he received $696 in additional compensation during 1963, which was attributable to his personal use of petitioner-corporation's car. Petitioner Mervyn argues that only the income of Hymen should be increased with respect *205 to the latter's use of the partnership's car during the first six months of 1962 because it was he alone who used the car. We do not doubt that partners can arrange and change from time to time the partnership shares to which each will be entitled, and that the tax consequences then follow the new agreement. Leff v. Commissioner, 235 F. 2d 439 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court. However, no evidence has been presented to us which indicates any rearrangement of the partners' interests in H. H. Mink & Son Bag Co., and, therefore, we cannot sustain Mervyn on this point. 786 4. Additions to Tax Under Section 6653(a) Respondent conceded on Brief that if we determine that the monies withdrawn by Hymen and Mervyn were, in fact, used to purchase merchandise from Bleichfeld Bag, then none of the petitioners is liable for the five percent addition to tax under the provisions of section 6653(a). Since we have held that cash purchases were in fact made from Bleichfeld Bag, we hold that none of the petitioners is liable for the addition to tax under section 6653(a). In order to reflect the concessions of the parties and the conclusions reached *206 herein, Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Hymen H. Mink and Doris Mink, Docket No. 2931-67; and Mervyn and Shirley Mink, Docket No. 2932-67.↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. In an attempt to clarify the confusion resulting from the record and respondent's brief as to the concession of one item in particular, we note that at the conclusion of the trial respondent conceded the disallowance of "socalled liquor purchases to the extent of $325.93" for 1962. In fact, this item involved expenses of a Florida trip made by Hymen Mink in early 1963. Respondent did disallow $329.53 in 1963 attributable to this trip. Therefore, respondent's concession for 1962 remedied the duplicate disallowance of the same item. On brief, respondent stated that the determination made with regard to the dividend income of petitioner Hymen Mink for the taxable year 1962 is erroneous to the extent of $325.93 because there was a disallowance of a similar item in 1963. However, we feel that there was a transpositional error made in the transcript because respondent requests a finding of a dividend to Hymen Mink in 1962 in the amount of $2,468.90, rather than $2,798.43 which is the amount set forth in the statutory notice. The difference is $329.53, not $325.93.↩
4. Respondent alleged cash withdrawals of $3,407.96 during 1963. However, a $3.60 error was made by respondent in computing the amount of cash withdrawals during 1963 which is attributable to the concession he made at trial. See footnote 3, supra.↩
5. Respondent conceded on brief $317.50 as not constituting dividends to Mervyn during the calendar year 1962.↩
6. Doris Mink and Shirley Mink are parties solely by virtue of their having signed the income tax returns for the years at issue.↩
7. Total adjustment to the purchases deduction of the partnership for the period January 1, 1962, through June 30, 1962. ↩
8. Total adjustments to the purchases deduction of Mink Bag for its taxable year ended June 30, 1963 - $6,909.80. ↩
9. Total adjustment to the purchases deduction of Mink Bag for its taxable year ended June 30, 1964.↩
10. The amount deducted was not ascertainable from the evidence presented.↩