T.C. Memo. 2002-124


UNITED STATES TAX COURT


JUNE CORDES, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20254-94, 9294-95,      Filed May 22, 2002.
            3284-96,  3305-96,
            4182-96, 19178-97,
           19256-97, 19277-97,
           19278-97, 19279-97.


Michael C. Mayhall and O. Christopher Meyers,

for petitioners.

Gary L. Bloom, for respondent.

_____

[1]For purposes of trial, briefing, and opinion, the cases of
the following petitioners are consolidated herewith:  Cordes
Finance Corp., docket Nos. 9294-95 and 3284-96; June J. Cordes,
docket No. 3305-96; Edmund J. & June J. Cordes, docket No. 4182-
96; Edmund J. Cordes, docket No. 19178-97; John J. Cordes, docket
No. 19256-97; Jean Ann Richard, docket No. 19277-97; Eddy Ben
Cordes, docket No. 19278-97; and June Cordes, docket No. 19279-
97.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax and additions to tax and/or penalties as follow:

Docket Nos. 9294-95 and 3284-96
Petitioner Cordes Finance Corp.:

|  |  | Penalties | |
| Year | Deficiency | sec. 6662(a)[2] | sec. 6663 |
| 1991 | $606,863 | $121,373 | $9,773 |
| 1992 | 686,695 | 131,784 | 20,832 |
| 1993 | 743,902 | 145,200 | 13,428 |

Docket Nos. 20254-94 and 3305-96
Petitioner June Cordes:[3]

|  |  | Additions to tax | |
| Year | Deficiency | sec. 6651(a)(1) | sec. 6654 |
| 1989 | $135,298 | $33,825 | $232 |
| 1990 | 134,608 | 33,652 | 8,863 |
| 1991 | 368,551 | 92,138 | 21,201 |

Docket No. 4182-96
Petitioners Edmund J. & June J. Cordes:

|  |  | Penalties |
| Year | Deficiency | sec. 6662(a) |
| 1992 | $17,281 | $3,456 |
| 1993 | 98,957 | 19,791 |

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Monetary amounts have been rounded to the nearest dollar amount as appropriate.

[3]June Cordes (docket No. 20254-94) and June J. Cordes (docket Nos. 3305-96 and 4182-96) refer to the same person. Hereinafter, June Cordes and June J. Cordes shall be referred to as Mrs. Cordes or petitioner, as appropriate.

Collectively, the above five cases are referred to as the income tax cases.

In these consolidated cases, respondent also determined deficiencies in petitioners' Federal gift tax and additions to tax as follow:

Docket No. 19178-97
Petitioner Edmund J. Cordes:

|         |            | Additions to tax |
| Year    | Deficiency | sec. 6651(a)(1) |
| ------- | ---------- | --------------- |
| 1983    | $73,100    | $18,275         |
| 1991    | 349,503    | -0-             |
| 1992    | 18,450     | 4,613           |
| 1993    | 13,500     | 3,375           |

Docket No. 19256-97
Petitioner John J. Cordes:

|         |            | Addition to tax |
| Year    | Deficiency | sec. 6651(a)(1) |
| ------- | ---------- | --------------- |
| 1994    | $154,230   | $38,558         |

Docket No. 19277-97
Petitioner Jean Ann Richard:[4]

|         |            | Additions to tax |
| Year    | Deficiency | sec. 6651(a)(1) |
| ------- | ---------- | --------------- |
| 1987    | $16,650    | $4,163          |
| 1988    | 130,500    | 32,625          |

[4]The parties and exhibits refer to this petitioner as Jean Ann Cordes and as Jean Ann Richard. Jean Ann Cordes married Joseph P. Richard prior to the issuance of the notices of deficiency. Throughout this opinion, we shall refer to her as Jean Ann Richard or petitioner for the sake of clarity. Neither her name nor marital status has any bearing on our holdings herein.

Docket No. 19278-97
Petitioner Eddy Ben Cordes:

| Year | Deficiency | Additions to tax sec. 6651(a)(1) |
|------|-----------|----------------------------------|
| 1983 | $190,450 | $47,613 |
| 1989 | 101,600 | 25,400 |

Docket No. 19279-97
Petitioner June Cordes:

| Year | Deficiency | Additions to Tax sec. 6651(a)(1) |
|------|-----------|----------------------------------|
| 1991 | $286,654 | -0- |
| 1993 | 28,767 | $7,192 |
| 1994 | 1,749,930 | 437,483 |

Collectively, the above five cases are referred to as the gift tax cases.

After concessions,[5] the issues for decision are:

(1) As to the income tax cases, whether respondent abused his discretion in determining that the interest charged for 1992 and 1993 on loans between Edmund J. Cordes (Mr. Cordes) and Cordes Finance Corp. (CFC) was unreasonable and excessive and in recharacterizing the amounts transferred to reflect an arm's-length rate of interest under section 482;

---

[5]Many issues in these consolidated cases have been settled or conceded by the parties, or are deemed conceded by this Court. Other issues raised by the parties are computational in nature. In the interest of space, these conceded, deemed conceded, computational, and settled issues, and their respective dispositions, are set forth in Appendix B, Summary of Conceded, Deemed Conceded, Computational, and Settled Issues. We incorporate those dispositions into our opinion by this reference.

(2)  as to the income tax cases, whether Mrs. Cordes, in 1989 through 1991, and Edmund J. and June J. Cordes (the Cordeses), in 1992 and 1993, received constructive dividends from CFC, resulting in additional taxable income to Mrs. Cordes for 1989 through 1991 and to the Cordeses for 1992 and 1993;

(3)  as to the income tax case in which CFC is the petitioner, whether CFC is liable for a civil fraud penalty on an underpayment of its income tax, pursuant to section 6663, for 1991; and

(4)  as to the gift tax cases, whether petitioners therein made completed gifts of stock in family-owned and closely held corporations for Federal gift tax purposes.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and two stipulations of agreed adjustments are incorporated in our findings by this reference.

I.  Background

A.  Petitioners

The Cordeses were married and resided in Lawton, Oklahoma, at the time they filed their individual and joint petitions. Petitioner John J. Cordes (John Cordes) was a resident of Austin, Texas, at the time his petition was filed.  Petitioner Jean Ann Richard was a resident of Lawton, Oklahoma, at the time her

petition was filed. Petitioner Eddy Ben Cordes was a resident of Lawton, Oklahoma, at the time his petition was filed. Each of the individual petitioners was a cash basis, calendar-year taxpayer. The Cordeses are the parents of petitioners John Cordes, Jean Ann Richard, and Eddy Ben Cordes. We shall hereinafter refer to the above-named petitioners collectively as the Cordes family.

CFC was incorporated in Oklahoma on January 24, 1964. CFC's principal place of business was in Lawton, Oklahoma, at the time its petitions were filed.

B. The Cordes Corporations

During the taxable years at issue, members of the Cordes family held legal title to all the shares of stock in the following closely held corporations:[6] CFC,[7] Eddie Cordes, Inc., Edmund Cordes, Inc., and John Cordes, Inc. (collectively, the Cordes corporations). The primary business activity of each of

---

[6]It appears from the record that members of the Cordes family have held legal title to all, or nearly all, of the shares of stock in CFC, Eddie Cordes, Inc., Edmund Cordes, Inc., and John Cordes, Inc. (collectively, the Cordes corporations), since their respective incorporations.

[7]In 1971, CFC issued 500 shares of stock, 105 of which were issued to Eddy Ben Cordes. The record does not indicate who became the recordholder of the other 395 shares. The record does indicate that, in 1988, Ellen Cordes, Mr. Cordes's daughter-in-law, held legal title to 100 shares which she transferred to Jean Ann Richard later that year. The testimony and exhibits confirm that members of the Cordes family held legal title to all outstanding stock in the Cordes corporations during the taxable years at issue.

the Cordes corporations was either selling, or financing customers' purchases of, motor vehicles.

Eddie Cordes, Inc., was incorporated in Oklahoma on January 2, 1963, as an authorized dealership for Jeep-Eagle and eventually Dodge vehicles. Edmund Cordes, Inc. (known as Cordes Dodge, Inc., until February 16, 1989), was incorporated in Oklahoma on January 2, 1967, as an authorized dealership for Dodge vehicles. John Cordes, Inc., was incorporated in Oklahoma on June 13, 1983, as an authorized dealership for Chevrolet, Oldsmobile, Pontiac, and General Motors vehicles. We collectively refer to Edmund Cordes, Inc., John Cordes, Inc., and Eddie Cordes, Inc., as the Cordes family dealerships. CFC operated mainly to finance new and used vehicles purchased by customers from the Cordes family dealerships.

Each of the Cordes family dealerships was governed by a franchise agreement with the vehicle manufacturer whose cars it sold. Each franchise agreement identified an individual as the franchise holder and bound that individual to specific restrictions. The two common restrictions relevant herein required the franchise holder (1) to maintain direct ownership of a certain minimum percentage of stock of that Cordes family dealership and (2) to maintain active operational control of the respective Cordes family dealership. The franchise holder had to

be both the principal owner and the principal operator of the Cordes family dealership involved.[8]

For most of the relevant periods, Mr. Cordes was the franchise holder for each Cordes family dealership. At times, John Cordes, Jean Ann Richard, and Eddy Ben Cordes were the franchise holders or principal owners, at least nominally (sometimes in conflict with the relevant franchise agreement), of John Cordes, Inc., Edmund Cordes, Inc., and Eddie Cordes, Inc., respectively. From time to time, legal title to the stock in the Cordes family dealerships would change hands among members of the Cordes family.

Each member of the Cordes family played a role in the Cordes corporations, but no one played a more substantial role than Mr. Cordes. Mr. Cordes served as president of each of the Cordes corporations and controlled every aspect of the day-to-day operations. No one questioned Mr. Cordes's dominance or attempted to exercise any control over any corporate decision, regardless of his or her ostensible stock ownership in that corporation. None of the Cordes corporations held shareholder meetings; instead, Mr. Cordes directed his corporate attorney to draft meeting minutes, which he brought home for Mrs. Cordes and

---

[8]The record does not contain any such franchise agreements, but we accept petitioners' testimony as to the existence of the agreements and the requirements therein regarding a principal owner and principal operator.

their children, as appropriate, to sign. Similar sequences of events occurred for each other document Mr. Cordes required Mrs. Cordes and their children to sign. Mr. Cordes prepared (or directed the preparation of), retained, and maintained all corporate minutes, records, stock certificates, and other corporate documents.

Mr. Cordes decided who would hold legal title to each of the shares of stock in each of the Cordes corporations. He believed he had the power to revoke those holdings if the shareholder did not follow his directions, or for any other reason, by virtue of his original capitalization of the Cordes corporations. The other members of the Cordes family acknowledged Mr. Cordes's complete control and, in many cases, did not know how many shares were titled in their names, if any, or whether they were officers in any of the Cordes corporations.

All external dealings were also controlled and executed by Mr. Cordes. Banks dealt solely with Mr. Cordes and held him liable on all corporate debts, although they occasionally required other members of the Cordes family to sign certain documents as a formality. Likewise, the Cordes corporations' accounting firm dealt only with Mr. Cordes. Mr. Cordes had sole control over the occurrence, timing, amount, and recipient of corporate payments for noncorporate reasons, and he occasionally

made below-market loans to and from the corporations to suit his own purposes.

Mrs. Cordes and Jean Ann Richard each served as officers or directors of each of the Cordes corporations but did not participate in any of the Cordes corporations' day-to-day operations or business decisions. Neither of them had any knowledge of any financial transactions, stock-related or otherwise. Jean Ann Richard treated the Cordes corporations as belonging exclusively to Mr. Cordes, no matter the amount of shares that may have been titled in her name.

John Cordes served as an officer of CFC, but his only operational involvement with the Cordes corporations was the occasional execution of vehicle repossessions in Texas. He otherwise was unaware of any corporate transaction. Eddy Ben Cordes served as an officer of CFC and as the full-time sales manager of Eddie Cordes, Inc. He had no decision-making ability, but he placed orders for acquisitions of new cars.

The Cordes family occasionally discussed the Cordes corporations' business and financial matters in informal settings, including at the Cordeses' kitchen table.

## II.  The Income Tax Cases

In the income tax cases, respondent contends that CFC transferred funds to the Cordeses, or the Cordeses diverted funds from CFC, or funds were otherwise appropriated from CFC for the

Cordeses' benefit. Below, we set forth additional findings of fact specific to these purported transactions and their tax consequences.

A. Loan Interest Allocation

Mr. Cordes lent $200,000 to CFC on August 20, 1991 (the first $200,000 loan), and again on September 18, 1991 (the second $200,000 loan) (collectively, the two $200,000 loans). CFC repaid in full each of the two $200,000 loans by December 31, 1992. On December 31, 1992, CFC paid Mr. Cordes $80,000, by check, as interest on the two $200,000 loans. The following day, January 1, 1993, Mr. Cordes lent $80,000 to CFC (the $80,000 loan).[9] CFC repaid in full the $80,000 loan by March 27, 1993. On December 31, 1993, CFC paid Mr. Cordes $20,000 as interest on the $80,000 loan. The record does not contain any evidence of indebtedness reciting the terms of the two $200,000 loans or the $80,000 loan.

CFC and the Cordeses treated the transfers from CFC to Mr. Cordes of $80,000 and of $20,000 consistently as between themselves; CFC reported them as deductible interest expenses on its 1992 and 1993 Forms 1120, U.S. Corporation Income Tax Return, respectively, and the Cordeses reported them as interest income

_____

[9]Mr. Cordes made this loan of $80,000 to CFC by endorsing the $80,000 check he had received as interest on the two $200,000 loans the day before and returning it to CFC.

on their 1992 and 1993 Forms 1040, U.S. Individual Income Tax Return, respectively.

   B.  Withdrawal of Corporate Funds for Distribution to Friends and Family

During each of the taxable years 1989 through 1993, CFC maintained an account in its corporate records that operated as a shareholder loan account for the Cordeses (account No. 312). Account No. 312 tracked amounts transferred between CFC and the Cordeses.

Mr. Cordes withdrew funds from CFC during each of the taxable years at issue; the withdrawn funds were charged to account No. 312 and were distributed as follows:

| Payee | 1989 | 1990 | 1991 | 1992 | 1993 |
|---|---|---|---|---|---|
| John Cordes | $108,000 | $54,000 | $84,000 | $20,000 | $30,000 |
| Mrs. Cordes[1] | 120,000 | 120,000 | 135,711 | 150,000 | 220,000 |
| Jean Ann Richard | 24,000 | 24,000 | 4,000 | -0- | -0- |
| Ellen Cordes[2] | 12,000 | 15,500 | 1,500 | -0- | -0- |
| Jean Patton | 18,000 | 18,000 | 1,500 | -0- | -0- |
| Mr. Cordes | 10,700 | 47,159 | 323,200 | -0- | -0- |
| Ray Lee | 18,000 | 12,000 | -0- | -0- | -0- |
| Margie Lange | 5,000 | -0- | -0- | -0- | -0- |
| Cordes bank accts. | -0- | -0- | 50,600 | -0- | -0- |
| John Cordes, Inc. | -0- | -0- | 300,000 | -0- | -0- |
| Total | 315,700 | 290,659 | 900,511 | 170,000 | 250,000 |

[1]Mrs. Cordes conceded that the funds distributed to her constitute income from constructive dividends as determined by respondent.  See Appendix B, Summary of Conceded, Deemed Conceded, Computational, and Settled Issues.  Because Mrs. Cordes's concession is inconsistent with the substance of her argument and in light of our holding regarding the beneficial ownership of the Cordes corporations, we relieve her of her concession and conclude only that these are constructive dividends to Mr. Cordes in 1992 and 1993.

[2]Ellen Cordes is Mr. Cordes's daughter-in-law; Jean Patton is Mr. Cordes's sister; Ray Lee and Margie Lange are Mr. Cordes's friends.  Also, the Cordes bank accounts are personal accounts jointly held by Mr. and Mrs. Cordes.  During 1991, Mr. Cordes and John Cordes were the sole holders of legal title in John Cordes, Inc.  See Appendix A, Schedule of Stock Transfers, for details of their proportionate holdings.

C.  Corporate Payments of Personal Expenses

In 1989, 1990, and 1991, Mr. Cordes caused CFC to pay certain of the Cordes family's personal expenses, as follows:

| Expenditure | 1989 | 1990 | 1991 |
|---|---|---|---|
| Medical insurance premiums[1] | $6,184 | $6,910 | -0- |
| Medical expenses | -0- | 3,121 | -0- |
| Life insurance premiums | 530 | 540 | -0- |
| American Express charges[2] | 148,760 | 168,854 | $36,986 |
| Martin's Restaurant[3] | 3,849 | 5,639 | 1,111 |

[1]Eddie Cordes, Inc., paid the medical insurance premiums in 1989 and 1990. CFC fully reimbursed Eddie Cordes, Inc., in 1992 for those expenses with funds charged to account No. 312. The parties tried by consent, and we consider, whether those expenses constitute constructive dividends in 1989 and 1990 as if CFC originally incurred those expenses. See Cordes v. Commissioner, T.C. Memo. 1994-377.
Respondent determined Mrs. Cordes was responsible for tax on $3,955 and $4,459, respectively. The parties, however, have stipulated that the medical insurance premiums were $6,184 and $6,910 in 1989 and 1990, respectively.

[2]Respondent determined Mrs. Cordes was responsible for tax on $148,757 for 1989, and $169,465 for 1990. The parties, however, have stipulated that CFC paid $148,760 and $168,854 of the Cordeses' American Express charges in 1989 and 1990, respectively. We treat the parties' stipulation as to 1990 as a concession on respondent's part, to the extent of $611.

[3]Respondent determined Mrs. Cordes was responsible for tax on $3,682 for 1989. The parties have stipulated, however, that CFC paid $3,849 of the Cordeses' Martin's Restaurant charges in 1989.

D. Diversion of Corporate Income

Mr. Cordes also diverted from CFC, for his and Mrs. Cordes's personal use, $57,732, $69,251, and $26,240 in 1991, 1992, and 1993, respectively. These amounts represented collections on debts CFC had previously reported as bad debts.[10]

E. Purchases of Corporate Notes at Bargain Prices

In 1986, Jaime D. Patton (the Cordeses' niece) and Robert A.

[10]The Cordeses do not dispute respondent's determinations regarding 1992 and 1993. We therefore treat the Cordeses as conceding those specific determinations. See Appendix B, Summary of Conceded, Deemed Conceded, Computational, and Settled Issues.

Bower (Jaime D. Patton's then-fiancé) (collectively, the Bowers) executed a 30-year note payable to CFC (the Bower Note). The Bower Note, secured by the Bowers' personal residence, had a face value of $80,000 and bore an 11.62-percent market rate of interest. The total amount of interest due under the Bower Note was $208,000.

In 1987, Joseph P. Richard,[11] Jean Ann Richard's husband, executed a 15-year note payable to CFC (the Richard Note). The Richard Note, secured by real estate jointly owned by the Richards, had a face value of $555,000 and bore a 10.1-percent market rate of interest. The total amount of interest due under the Richard Note was $525,000.

Both the Bowers and the Richards made payments on their notes.[12] On March 25, 1991, the Bowers still owed $243,200 in principal and interest, and the Richards still owed $813,000 in principal and interest. On March 25, 1991, Mr. Cordes purchased from CFC the Bower Note for $35,200 and the Richard Note for $288,000.

At issue is whether, and to what extent, Mrs. Cordes has taxable income from constructive dividends stemming from Mr.

---

[11]The petitioners stipulated that whether Jean Ann Richard executed the Richard Note is at issue. In light of our holding, infra, we need not decide that issue.

[12]Although the parties stipulated that the payments were timely, many of the payments were, in fact, made late.

Cordes's purchases of the Bower Note and the Richard Note for amounts less than their fair market values.

III.  The Gift Tax Cases

In the gift tax cases, respondent determined that members of the Cordes family transferred shares among themselves without properly reporting those transfers or paying gift tax thereon. Below, we set forth the findings of fact specifically relevant to the gift tax cases.  The details of the stock transfers can be found in Appendix A, Schedule of Stock Transfers.[13]

A.  CFC Stock Transfers

CFC initially issued 500 shares of stock in January 1964-- 250 shares to Mr. Cordes, 249 shares to Mrs. Cordes, and 1 share to B.B. Journeycake (Mrs. Cordes's father).  On January 4, 1965, B.B. Journeycake transferred 1 share to the Eddy Ben Cordes Trust.  On January 8, 1965, Mrs. Cordes transferred 28 shares to Eddy Ben Cordes.  On December 29, 1965, Mr. Cordes transferred 50 shares, Mrs. Cordes transferred 50 shares, and the Eddy Ben Cordes Trust transferred 1 share, to Eddy Ben Cordes.  On December 16, 1966, Mr. Cordes transferred 100 shares to Eddy Ben Cordes.  On January 8, 1971, CFC issued 500 additional shares of

---

[13]The record does not contain complete information regarding all of the stock transfers which took place before and during the taxable years at issue.  As the stock transfers pertain to the issues in the gift tax cases, however, the record contains information sufficient for us to decide the issues presented by these cases.

its stock, 105 shares of which were issued to Eddy Ben Cordes.[14] On March 14, 1983, Eddy Ben Cordes transferred 334 shares to Mrs. Cordes. On January 14, 1994, Mrs. Cordes transferred 334 shares back to Eddy Ben Cordes.

On CFC's Schedule E, Compensation of Officers, to its 1992 and 1993 Forms 1120, CFC reported that Mrs. Cordes owned 33.4 percent and Jean Ann Richard owned 33.3 percent of its stock at the end of 1992 and 1993.[15] During his examination of CFC's taxable years 1988 through 1993, respondent determined that Mrs. Cordes owned approximately one-third of CFC's stock. On Schedule E to its 1994 Form 1120, CFC reported that Eddy Ben Cordes owned 33.4 percent, John Cordes owned 33.3 percent, and Jean Ann Richard owned 33.3 percent of its stock at the end of 1994.

B. Eddie Cordes, Inc., Stock Transfers

Eddie Cordes, Inc., initially issued 1,000 shares of stock in January 1963--500 shares to Mr. Cordes, 400 shares to Mrs. Cordes, and 100 shares to B.B. Journeycake. In January 1971, B.B. Journeycake transferred 100 shares to Mr. Cordes. Also in January 1971, Mrs. Cordes transferred 400 shares to Jean Ann Richard. On March 29, 1983, Mr. Cordes transferred 600 shares to

---

[14]See supra note 7.

[15]CFC's 1992 and 1993 Forms 1120 do not reveal who held legal title to the remaining 33.3 percent of CFC stock during those taxable years. We note, however, that Mr. Cordes did not hold legal title to any shares of CFC during those taxable years.

Jean Ann Richard. On January 7, 1987, Jean Ann Richard transferred 600 shares back to Mr. Cordes.[16] On July 25, 1988, Jean Ann Richard transferred the 400 shares remaining in her name to Eddy Ben Cordes. On August 8, 1991, Mr. Cordes transferred 600 shares to Eddy Ben Cordes.

### C. Edmund Cordes, Inc., Stock Transfers

Edmund Cordes, Inc., initially issued 1,000 shares of stock in January 1967--600 shares to Mr. Cordes, 200 shares to Mrs. Cordes, and 200 shares to a John Parkinson. On February 15, 1967, Mrs. Cordes transferred 1 share to John Parkinson. On January 8, 1971, John Parkinson transferred 201 shares and Mrs. Cordes transferred 199 shares to Eddy Ben Cordes. On October 26, 1979, Mr. Cordes transferred 500 shares to Eddy Ben Cordes. Mr. Cordes effected this transfer so that Eddy Ben Cordes would be in compliance with the franchise agreement Eddy Ben Cordes had made with Chrysler Corp. Chrysler Corp. terminated that franchise agreement in 1988 and entered into a new franchise agreement with Mr. Cordes. That franchise agreement required Mr. Cordes to be the principal owner and principal operator of Edmund Cordes, Inc. Nevertheless, on July 25, 1988, Eddy Ben Cordes transferred 900

---

[16]Mr. Cordes testified that the franchise agreement with Jeep-Eagle/Dodge required Mr. Cordes to maintain ownership of at least 60 percent of Eddie Cordes, Inc.'s stock. Presumably, this transfer was made so as to comply with that franchise agreement. However, Mr. Cordes's testimony is irreconcilable with his transfer in 1991 to Eddy Ben Cordes of 600 shares of stock in Eddie Cordes, Inc.

shares to Jean Ann Richard, and Ellen Cordes transferred 100 shares[17] to Jean Ann Richard.  On January 26, 1989, Jean Ann Richard transferred 1,000 shares to Mr. Cordes.  On August 20, 1991, Mr. Cordes transferred 1,000 shares back to Jean Ann Richard.

D.  John Cordes, Inc., Stock Transfers

John Cordes, Inc., initially issued 500 shares of stock in May 1983--300 shares to Mr. Cordes, 100 shares to Mrs. Cordes, and 100 shares to Jean Ann Richard.  On January 7, 1987, Mrs. Cordes and Jean Ann Richard each transferred 100 shares to John Cordes.  On August 8, 1991, Mr. Cordes transferred 300 shares to John Cordes.[18]  Mr. Cordes effected these transfers of John Cordes, Inc., stock to John Cordes because he intended John Cordes to hold legal title to the stock and operate John Cordes, Inc.  Sometime thereafter, the franchisor, General Motors, informed Mr. Cordes that he was in violation of their franchise agreement requiring that Mr. Cordes be the principal owner and principal operator of John Cordes, Inc.  In response, on March 16, 1994, John Cordes transferred 500 shares back to Mr. Cordes.

---

[17]See supra note 7.

[18]Mr. Cordes reported a gift to John Cordes of 200 shares of stock in John Cordes, Inc., in 1991.

E.   The Gift Tax Returns and Notices of Deficiency

None of the stock transfers at issue in the gift tax cases were made for any consideration.[19]

Mr. Cordes timely filed Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return (gift tax return), for 1991 but never filed a gift tax return for 1983, 1992, or 1993. In his 1991 gift tax return, Mr. Cordes elected to split gifts with Mrs. Cordes, and Mr. Cordes reported making two gifts--200 shares of stock in John Cordes, Inc.,[20] and $100,000 cash--both to John Cordes.  Respondent determined, as set forth in his notice of deficiency, that, pursuant to section 2503(a), Mr. Cordes made taxable gifts in 1983, 1991, 1992, and 1993 of stock and/or cash equivalents.  The following transfers are still at issue:

---

[19]In their petitions in docket No. 19256-97 and docket No. 19277-97, John Cordes and Jean Ann Richard contend they received items in exchange for their shares equal in value to those shares transferred.  Neither John Cordes nor Jean Ann Richard discussed these contentions at trial or on brief, and the record contains no evidence to support these contentions.  We therefore disregard the statements made in those petitions and find the transfers were made for no consideration.

[20]As detailed above, in 1991, Mr. Cordes transferred 300 shares of stock in John Cordes, Inc., to John Cordes.  The parties have stipulated that it is the transfer of 300 shares that is disputed herein.

| Taxable Year | Date of Transfer | Details of Transfer |
| --- | --- | --- |
| 1983 | Mar. 29, 1983 | 600 shares of Eddie Cordes, Inc., to Jean Ann Richard |
| 1991 | Aug. 8, 1991 | 600 shares of Eddie Cordes, Inc., to Eddy Ben Cordes |
| 1991 | Aug. 8, 1991 | 300 shares of John Cordes, Inc., to John Cordes |

John Cordes never filed a gift tax return for 1994. Respondent determined, as set forth in his notice of deficiency, that, pursuant to section 2503(a), John Cordes made a taxable gift in 1994 to Mr. Cordes of 500 shares of stock in John Cordes, Inc.[21]

Jean Ann Richard never filed a gift tax return for 1987 or 1988. Respondent determined, as set forth in his notice of deficiency, that, pursuant to section 2503(a), Jean Ann Richard made the following taxable gifts:

---

[21]Respondent subsequently took the position in Cordes v. Commissioner, T.C. Memo. 2002-125, that John Cordes instead sold these 500 shares to Mr. Cordes for $800,000, and respondent acknowledged this change in position from that taken in the case before us. In light of our finding herein regarding the beneficial ownership of John Cordes, Inc., we decline to address respondent's change of position.

| Taxable Year | Date of Transfer | Details of Transfer |
|---|---|---|
| 1987 | Jan. 7, 1987 | 100 shares of John Cordes, Inc., to John Cordes |
| 1987 | Jan. 7, 1987 | 600 shares of Eddie Cordes, Inc., to Mr. Cordes |
| 1988 | July 25, 1988 | 400 shares of Eddie Cordes, Inc., to Eddy Ben Cordes |

Eddy Ben Cordes never filed a gift tax return for 1983. Respondent determined, as set forth in his notice of deficiency, that, pursuant to section 2503(a), Eddy Ben Cordes made a taxable gift in 1983 to Mrs. Cordes of 334 shares of stock in CFC.

Mrs. Cordes timely filed her 1991 gift tax return but never filed a gift tax return for 1987, 1993, or 1994. In her 1991 gift tax return, Mrs. Cordes elected to split gifts with Mr. Cordes, and she reported making a gift to Jean Ann Richard of 1,000 shares of stock in Edmund Cordes, Inc. Respondent determined, as set forth in his notice of deficiency, that Mrs. Cordes made taxable gifts of stock and/or cash equivalents in 1987, 1991, 1993, and 1994.[22] The following transfers are still at issue:

_____

[22]Regarding 1987, respondent determined only that Mrs. Cordes made taxable gifts; respondent did not determine any deficiency in Mrs. Cordes's tax for 1987.

| Taxable Year | Date of Transfer | Details of Transfer |
|---|---|---|
| 1987 | Jan. 7, 1987 | 100 shares of John Cordes, Inc., to John Cordes |
| 1991 | Aug. 20, 1991 | 1,000 shares of Edmund Cordes, Inc., to Jean Ann Richard |
| 1994 | Jan. 14, 1994 | 334 shares of CFC to Eddy Ben Cordes |

OPINION

## I.  Income Tax Cases

The five sets of transactions at issue in the income tax cases are similar in nature in that respondent determined they each give rise to constructive dividends to the shareholder-taxpayer(s).  The first transactions, involving the excessive interest paid by CFC to Mr. Cordes, however, are of a slightly different nature in that our decision involves a reallocation of income and deduction under section 482.  For that reason, we initially and separately consider the section 482 reallocation, and we then decide whether the five sets of transactions result in constructive dividends to petitioners.

### A.  Loan Interest Allocation

Respondent determined that CFC transferred to Mr. Cordes amounts in excess of those that can reasonably be characterized as interest on the two $200,000 loans and the $80,000 loan (collectively, the three loans).  Respondent reallocated CFC's and the Cordeses' income and deductions pursuant to his authority

under section 482; respondent accordingly disallowed what he determined were excessive interest deductions claimed by CFC-- $52,870 in 1992 and $19,105 in 1993--and determined that like amounts were properly allocated to the Cordeses as income from constructive dividends, rather than from interest.[23]  See sec. 1.482-1A(b)(1), Income Tax Regs.

On brief, respondent conceded that CFC may deduct as interest expense--and the Cordeses may report as income from interest, rather than from constructive dividends--amounts equal to those calculated pursuant to section 1.482-2(a)(2)(iii), Income Tax Regs.; i.e., the safe-haven interest rate.[24] Respondent maintained that the amounts of the transfers in excess of those computed in accordance with section 1.482-2(a)(2)(iii), Income Tax Regs., are nondeductible interest expenses with regard to CFC and income from constructive dividends with regard to the Cordeses.

---

[23]In his notice of deficiency, respondent failed to reduce the Cordeses' interest income by the amounts he reallocated to income from constructive dividends.  In his reply brief, respondent conceded that the Cordeses may reduce interest income reported on their returns to the extent we hold the transfers are income to the Cordeses from constructive dividends.

[24]The parties have not computed the safe-haven interest rates applicable under sec. 1.482-2(a)(2)(iii), Income Tax Regs. Our holding is not to be construed in any way as allowing respondent to reallocate, with respect to these items, more than $52,870 in 1992 or $19,105 in 1993.

CFC and the Cordeses (collectively, with respect to this issue, petitioners) contend that, under section 482,[25] 18 percent is an arm's-length rate of interest for loans such as the three loans before us[26] and that income and deductions from interest are properly allocable in a manner consistent with an 18-percent rate of interest.[27]

---

[25]Neither CFC nor the Cordeses (collectively, with respect to this issue, petitioners) dispute the applicability of sec. 482; they only dispute the way in which respondent applies sec. 482.

[26]Throughout these proceedings, petitioners have treated the three loans as made on identical terms with identical interest rates.

[27]Petitioners also argued on brief that CFC's and the Cordeses' consistent reporting of the interest at issue, as between themselves, justified the amounts of interest expense and income claimed. In light of our holding, and because petitioners offered no authority for their supposition, we decline to consider that argument.

Furthermore, petitioners appear to contend for the first time in their reply brief that respondent would abuse his discretion under sec. 482 to reallocate income and deductions in a manner inconsistent with an interest rate of 18 percent. Ordinarily, we do not consider issues raised for the first time in a party's reply brief. Cordes v. Commissioner, T.C. Memo. 1994-377, and cases cited therein. We note, in passing, that the Commissioner is afforded broad discretion under sec. 482, and his reallocations will be upheld absent a taxpayer's showing that they are arbitrary, capricious, or unreasonable. Dolese v. Commissioner, 811 F.2d 543, 546 (10th Cir. 1987), affg. 82 T.C. 830 (1984); Ach v. Commissioner, 42 T.C. 114, 125-126 (1964), affd. 358 F.2d 342 (6th Cir. 1966). Moreover, petitioners' income and deductions from interest were not reported using an 18-percent rate.

Section 482[28] gives the Commissioner authority to reallocate income and deductions among certain related taxpayers. Respondent's determination under section 482 is presumptively correct, and the burden of disproving that determination lies with petitioners.  Dolese v. Commissioner, 811 F.2d 543, 546 (10th Cir. 1987), affg. 82 T.C. 830 (1984).

The purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled and unrelated taxpayer by determining the true taxable income of the controlled taxpayer using the standard of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer.  Ciba-Geigy Corp. v. Commissioner, 85 T.C. 172, 221 (1985); Huber Homes, Inc. v. Commissioner, 55 T.C. 598, 605 (1971); sec. 1.482-1(a)(1) and (b)(1), Income Tax Regs.  An interest rate satisfies the arm's-length standard under section 482 if it is a rate that was actually charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between

---

[28]SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG
           TAXPAYERS.
     In any case of two or more organizations * * *
owned or controlled directly or indirectly by the same
interests, the Secretary may * * * allocate gross
income, deductions, credits, or allowances between or
among such organizations * * * if he determines that
such * * * allocation is necessary in order * * *
clearly to reflect the income of any of such
organizations * * *

unrelated parties under similar circumstances, considering all the relevant factors.  Sec. 1.482-2(a)(2)(i), Income Tax Regs.

Petitioners have not introduced evidence of actual rates charged in transactions with or between unrelated taxpayers, nor have they offered any but the barest evidence relevant to deciding what a chargeable interest rate would be in an independent transaction involving unrelated parties under similar circumstances.  Petitioners provided us only with the original principal amounts of the loans and have indicated that the loans were unsecured.  Petitioners introduced no evidence regarding other relevant factors, including the duration of the loans, CFC's credit standing, and the prevailing interest rates at CFC's or the Cordeses' situs for comparable loans between unrelated parties.  Id.  Because petitioners have failed to establish that respondent's determinations are incorrect, let alone that 18 percent is an arm's-length rate of interest on the three loans under section 1.482-2(a)(2)(i), Income Tax Regs., we must hold for respondent.

In holding for respondent, we note that respondent's concession to reallocate petitioners' interest income and deductions in accordance with the safe-haven interest rate found in section 1.482-2(a)(2)(iii)(B), Income Tax Regs., satisfies the arm's-length standard of section 482, and we accept it.  The calculation of the appropriate adjustments to CFC's interest

expenses and the Cordeses' income from interest and from constructive dividends, however, must await the Rule 155 computation.

B.   Constructive Dividends

Respondent determined that Mrs. Cordes, in 1989 through 1991, individually, and the Cordeses, in 1992 and 1993, jointly, had taxable income from constructive dividends made by CFC to Mrs. Cordes, as one of CFC's shareholders.  See sec. 61(a)(7).  Those constructive dividends, as respondent determined, consisted in part of the portion of payments made by CFC to Mr. Cordes on the three loans in excess of the amount that represents an arm's-length rate of interest[29] (calculated in accordance with our holding, supra) and consisted in part of (1) withdrawals of corporate funds for distribution to friends and family, (2) corporate payments of personal expenses, (3) diversion to the Cordeses of corporate income, and (4) Mr. Cordes's bargain purchase of corporate notes.[30]

Petitioners contend that the transfers do not constitute constructive dividends to Mrs. Cordes (1) because Mrs. Cordes did

---

[29]We discuss this transaction in the context of constructive dividends in connection with our discussion of diversion of corporate income because the applicable law is similar.

[30]Respondent also determined certain other items constituted income from constructive dividends from CFC to the Cordeses in the taxable years before us, but either Mr. or Mrs. Cordes or respondent has conceded those items.  See Appendix B, Summary of Conceded, Deemed Conceded, Computational, and Settled Issues.

not control CFC, control or participate in the transfers at issue, or in some cases know of the transfers at issue, and (2) because the transfers did not cause an accession to her wealth.

The law in this area is well settled.  Section 301(a) and (c)(1) requires the inclusion in a shareholder's gross income of amounts received as dividends.  Secs. 61(a)(7), 301(c)(1), 316(a); Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 392 (1983); see Ireland v. United States, 621 F.2d 731, 735 (5th Cir. 1980); see also Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729-731 (1929).  Section 316(a) defines a dividend as "any distribution of property made by a corporation to its shareholders--(1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year".[31]  It is not necessary that the corporation intend a dividend, or that the distribution be termed a dividend or be recorded as such.  Dolese v. United States, 605 F.2d 1146, 1152 (10th Cir. 1979).  Thus, dividends may be either formally declared or they may be "constructive".  Ireland v. United States, supra at 735.

---

[31]Petitioners have failed to meet their burden of proving that there were not sufficient accumulated or current earnings and profits to support the deficiencies determined in respondent's notices of deficiency.  Rule 142(a).  But see Appendix B, Summary of Conceded, Deemed Conceded, Computational, and Settled Issues.

A constructive dividend is paid when a corporation confers an economic benefit on a shareholder without expectation of repayment. <u>Wortham Mach. Co. v. United States</u>, 521 F.2d 160, 164 (10th Cir. 1975). Petitioners do not dispute that the payments in question were made without expectation of repayment; they focus instead on whether CFC conferred an economic benefit on Mrs. Cordes as a shareholder of CFC. Because only shareholders may receive constructive dividends for Federal income tax purposes and because we do not believe Mrs. Cordes was a shareholder of CFC for Federal income tax purposes, we conclude she did not receive constructive dividends from CFC during the years at issue.

Mrs. Cordes held legal title to at least 33.4 percent of the outstanding shares of stock in CFC throughout the taxable years at issue. The Cordeses' children held legal title to the balance of the shares. See Appendix A, Schedule of Stock Transfers, and notes therein. Regardless of Mrs. Cordes's percentage of record ownership, however, "record ownership of stock, standing alone, is not determinative of who is required to include any dividends attributable to such stock in gross income. Rather, beneficial ownership is the controlling factor." <u>Cordes v. Commissioner</u>, T.C. Memo. 1994-377 (citing <u>Walker v. Commissioner</u>, 544 F.2d 419 (9th Cir. 1976), revg. T.C. Memo. 1972-223; <u>Ragghianti v. Commissioner</u>, 71 T.C. 346, 349 (1978), affd. without published

opinion 652 F.2d 65 (9th Cir. 1981); Cepeda v. Commissioner, T.C. Memo. 1994-62).  "'Beneficial ownership is marked by command over property or enjoyment of its economic benefits.'"  Cordes v. Commissioner, T.C. Memo. 1994-377 (quoting Cepeda v. Commissioner, supra).  A taxpayer's total control over a corporation and use of corporate funds for personal reasons can result in constructive dividends, even though the taxpayer did not hold legal title to the corporation's stock at the time of the advances.  Yelencsics v. Commissioner, 74 T.C. 1513, 1532-1533 (1980); Cordes v. Commissioner, T.C. Memo. 1994-377.

In Cordes v. Commissioner, T.C. Memo. 1994-377, we held Mr. Cordes received constructive dividends even if he did not hold legal title to any shares, because we found he exercised full control over CFC in the taxable year at issue, 1988.[32]  In 1988, the taxable year immediately preceding those before us here, Mr. Cordes caused CFC to make distributions to him, to friends and family, and to his personal creditors.  He controlled the timing, amount, and uses of those funds.  Because Mr. Cordes had total control over CFC and used the corporate funds for personal reasons, we concluded that "whether or not petitioner [Mr. Cordes] was a stockholder of record, petitioner had beneficial

---

[32]We note in passing that in Cordes v. Commissioner, T.C. Memo. 1994-377, we stated, based on the evidence therein:  "[Mr. Cordes's] complete control over Cordes Finance Corp. continued until at least 1992".

ownership of all of the stock of Cordes Finance Corp. in 1988." By virtue of his beneficial ownership, we held he received constructive dividends in 1988 and was required to include those dividends in his gross income.

Mr. Cordes's relationship to CFC did not change from 1988 to 1989, or during any of the other taxable years before us; in the taxable years 1989 through 1993, Mr. Cordes remained in complete control of CFC and remained the beneficial owner of the shares of stock therein. In deciding beneficial ownership, we examine the facts and circumstances concerning one's control over the property and continued enjoyment of economic benefits. Yelencsics v. Commissioner, supra at 1532; Cepeda v. Commissioner, supra; see also Weiner v. Commissioner, T.C. Memo. 1984-163 (citing Schoenberg v. Commissioner, 302 F.2d 416 (8th Cir. 1962), affg. T.C. Memo. 1961-235; Snyder v. Commissioner, 66 T.C. 785 (1976)).

Mr. Cordes's actions with respect to CFC exceeded the level of control normally conferred upon corporate officers. He made every corporate decision without conferring with the shareholders of record. Any purported shareholder meeting was an invention of his design; he made all shareholder decisions and instructed the legal titleholders merely where to sign the corporate minutes, loan arrangements, stock certificates, and so forth. The legal titleholders complied with his every instruction.

His actions were that of an owner and sole shareholder. He viewed the Cordes corporations as his own and used them to make generous loans and gifts to family and friends, and to satisfy personal obligations and desires. He made loans to third parties of CFC funds and then unilaterally forgave those loans. Mr. Cordes controlled the timing, amount, and use of the distributions and transactions.

The legal titleholders viewed CFC as Mr. Cordes did. They paid no attention to their purported stockholdings and never attempted to exercise any of the rights that "ownership" may have theoretically provided. They did not attempt to attend shareholder meetings, transfer or vote their shares, or otherwise involve themselves in CFC, unless Mr. Cordes instructed them to do so. His control was unmitigated.

Taken together, the facts and circumstances reveal that Mr. Cordes was CFC's sole beneficial owner during the taxable years at issue; Mrs. Cordes's status as a shareholder was in name only. Because beneficial ownership is the controlling factor in deciding who is required to include dividends in gross income, we hold that Mrs. Cordes did not receive constructive dividends from CFC for the 1989, 1990, and 1991 taxable years, the years in which she filed separately. With respect to those taxable years, we conclude only that Mrs. Cordes was not a beneficial owner or shareholder of CFC for Federal income tax purposes. We decline

to consider whether Mr. Cordes received constructive dividends as a shareholder for those taxable years, as he is not a party to those years herein.

The Cordeses filed jointly for 1992 and 1993, and, in docket No. 4182-96, respondent determined they were jointly liable for tax on the receipt of constructive dividends for those taxable years.  In that docket, we must consider whether CFC conferred an economic benefit on petitioner-shareholder, Mr. Cordes, as beneficial owner.  See Dolese v. United States, 605 F.2d at 1152 (citing Palo Alto Town & Country Vill., Inc. v. Commissioner, 565 F.2d 1388 (9th Cir. 1977), affg. T.C. Memo. 1973-223).  In order for a company-provided benefit to be treated as income to the shareholder, the item "must primarily benefit taxpayer's personal interests as opposed to the business interests of the corporation."  Ireland v. United States, 621 F.2d at 735; accord Dolese v. United States, supra at 1152.

Petitioners bear the burden of proving that the amounts at issue were not expended for personal benefit or in discharge of personal obligations.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 663 (1962); Arnold v. Commissioner, T.C. Memo. 1994-97.  Our standard, in reviewing these many expenditures, is whether the expenditures primarily benefited CFC or Mr. Cordes.  Frazier v.

<u>Commissioner</u>, T.C. Memo. 1994-358, affd. 90 F.3d 437 (10th Cir. 1996).

      1.  <u>Withdrawal of Corporate Funds for Distribution to Friends and Family</u>

In 1992 and 1993, Mr. Cordes directed the withdrawal of corporate funds from CFC and the payment of those funds to John Cordes and Mrs. Cordes. It is well-settled that corporate payments to children of its shareholders can constitute constructive dividends to the shareholders when the payments are made to satisfy personal parental objectives as opposed to the bona fide business purposes of the corporation. <u>Engg. Sales, Inc. v. United States</u>, 510 F.2d 565, 569-570 (5th Cir. 1975); <u>58th St. Plaza Theatre, Inc. v. Commissioner</u>, 195 F.2d 724, 725 (2d Cir. 1952), affg. 16 T.C. 469 (1951); <u>Frazier v. Commissioner</u>, <u>supra</u>.

Likewise, payments to family members can constitute constructive dividends to the shareholders when the payments fail to benefit the corporation. <u>Cordes v. Commissioner</u>, T.C. Memo. 1994-377 (in situation nearly identical to that before us, this Court held corporate transfers to friends, wife, and children of shareholder to be constructive dividend to shareholder, namely Mr. Cordes, when shareholder failed to show corporate benefit or expectation of repayment); <u>Proctor v. Commissioner</u>, T.C. Memo. 1981-436 (payments to shareholder's mother, in excess of compensation reasonable for services provided, constituted

constructive dividend income to shareholder).  Petitioners have introduced no evidence that these transfers benefited CFC and do not contend that the transfers were made for any reason other than personal reasons.  Therefore, because petitioners failed to show Mr. Cordes received no personal benefit or satisfaction from these transfers, we hold Mr. Cordes received constructive dividends in 1992 and 1993 with respect to these items in the amounts determined by respondent.

      2.  <u>Diversion of Corporate Income[33] and Loan Interest Allocation</u>

In 1992 and 1993, Mr. Cordes diverted CFC income--amounts collected on debts CFC had previously reported as bad debts--to the Cordeses' benefit.  Income diverted from a corporation for a shareholder's benefit may be a constructive dividend to that shareholder.  <u>Truesdell v. Commissioner</u>, 89 T.C. 1280, 1295 (1987); <u>Fed. Auto Body Works, Inc. v. Commissioner</u>, T.C. Memo. 1990-303.  Petitioners have not introduced any evidence that CFC recognized any benefit from these transfers.  We hold Mr. Cordes received constructive dividends with respect to these items in the amounts determined by respondent.

Likewise, with regard to the excess interest paid in 1992 and 1993 by CFC to Mr. Cordes, discussed <u>supra</u>, petitioners

---

[33]See <u>supra</u> note 10.  Petitioners did not present arguments regarding the diversion of corporate income in 1992 and 1993.  We nevertheless choose to address it briefly here.

offered no evidence showing that either a benefit accrued to CFC or a benefit did not accrue personally.  We therefore hold that Mr. Cordes received constructive dividends with respect to the amounts CFC paid to him as interest on the three loans, to the extent the amounts of those payments exceed the amounts allocated as interest income in accordance with our holding supra.  We sustain respondent's determination with regard to this issue.

C.  Fraud Penalty Against CFC

Respondent determined CFC was liable for a civil fraud penalty in the amount of $9,773 for 1991, pursuant to section 6663.  Respondent based his determination on CFC's understatement of income attributable to $35,349 from late fees received.  CFC filed an amended return for 1991 reflecting CFC's receipt of this income.  The parties stipulated that this issue of whether CFC is liable for the civil fraud penalty for 1991 would be resolved on the same basis as that in the final decision in Cordes Fin. Corp. v. Commissioner, T.C. Memo. 1997-162, affd. without published opinion 162 F.3d 1172 (10th Cir. 1998).  In Cordes Fin. Corp., we sustained respondent's determination of fraud for the 1990 taxable year because Mr. Cordes, as CFC's president, schemed to divert and disguise the diverted income.  CFC appealed our decision to the Court of Appeals for the Tenth Circuit.  However, as the Court of Appeals stated in note 1 to its unpublished opinion, CFC did not dispute our holding as to the fraud penalty

in its appeal.  In accordance with the parties' stipulation, we hold CFC is liable for the civil fraud penalty for 1991.

II.  Gift Tax Cases

Respondent determined that the disputed stock transfers are taxable gifts pursuant to section 2503(a).  Petitioners in these gift tax cases contend that (1) the stock in CFC was not actually transferred by and between Eddy Ben Cordes and Mrs. Cordes because Eddy Ben Cordes and Mrs. Cordes did not knowingly and voluntarily transfer CFC stock between themselves, and (2) all of the transfers of stock at issue herein were incomplete gifts because Mr. Cordes reserved and retained a power to revoke, or to otherwise alter, any and all of the gifts of stock in the Cordes corporations.  Therefore, petitioners argue, none of the disputed transfers constitute completed gifts for Federal gift tax purposes.

Section 2501(a)(1) imposes a tax on the "transfer of property by gift".  This gift tax applies "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible".  Sec. 2511(a); sec. 25.2511-1(a), Gift Tax Regs. The terms "transfer * * * by gift" and "indirect" are designed to encompass all transfers whereby, and to the extent that, property or a property right is gratuitously passed to or conferred upon another, regardless of the means or the device employed in its

accomplishment.  H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 457, 476; S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 496, 524; sec. 25.2511-1(c)(1), Gift Tax Regs; see also Dickman v. Commissioner, 465 U.S. 330, 334 n.4 (1984) (describing the scope of the gift tax to be analogous in breadth to the definition of gross income contained in section 61); Commissioner v. Wemyss, 324 U.S. 303, 306 (1945) ("Congress intended to use the term 'gifts' in its broadest and most comprehensive sense * * * [in order] to hit all the protean arrangements which the wit of man can devise").

Nevertheless, gift tax is not applicable to certain types of transfers.  "It is applicable only to a transfer of a beneficial interest in property.  It is not applicable to a transfer of bare legal title to a trustee."  Sec. 25.2511-1(g)(1), Gift Tax Regs. We conclude below, based on all the facts and circumstances, that Mr. Cordes had complete control over all the Cordes corporations and that the disputed transfers herein were only of bare legal title and are therefore not subject to the gift tax.

A.  Transfers of CFC Stock By and Between Eddy Ben Cordes and Mrs. Cordes

Respondent contends the purported transfers of shares of stock in CFC by and between Eddy Ben Cordes and Mrs. Cordes are completed gifts of stock and subject to the gift tax.  Eddy Ben Cordes and Mrs. Cordes contend that because neither of them knew of the transfers or voluntarily made those transfers, the

transfers did not occur for Federal gift tax purposes. We have considered Eddy Ben Cordes's and Mrs. Cordes's levels of involvement in these and other corporate activities, and we agree that these transfers are not subject to the gift tax, not because the transfers of legal title to the stock did not occur on the books of the corporation, but because the transfers were not of a beneficial interest.

In Cordes v. Commissioner, T.C. Memo. 1994-377, we found Mr. Cordes to be the beneficial owner of CFC in 1988. We concluded earlier in this opinion that Mr. Cordes was the beneficial owner of CFC in 1989 through 1993. The facts before us indicate that Mr. Cordes's control has existed unimpaired from CFC's incorporation in 1964 through the date of the trial. On all of the intervening dates, Mr. Cordes was the beneficial owner of all of CFC's stock.

Eddy Ben Cordes did not have any beneficial interest in CFC in 1983 when he transferred mere legal title to Mrs. Cordes, nor did he later obtain a beneficial interest in CFC and transfer that to Mrs. Cordes. Because Eddy Ben Cordes never transferred a beneficial interest in CFC to Mrs. Cordes, the transfer is not subject to the gift tax.

Likewise, Mrs. Cordes never acquired a beneficial interest in CFC and therefore never transferred such an interest. Mrs. Cordes held only legal title to some of CFC's stock from 1983

through 1994. She transferred that legal title to Eddy Ben Cordes in 1994, but at no time did she transfer a beneficial interest in CFC. The transfer, therefore, is not subject to the gift tax.

We conclude that because Mr. Cordes owned all beneficial interest in CFC during the years at issue, the transfers of CFC stock by and between Eddy Ben Cordes and Mrs. Cordes were merely of legal title and, as a result, were not subject to the gift tax.

B.  Transfers of Stock in the Cordes Family Dealerships

The other disputed transfers were of shares of stock in the Cordes family dealerships by and between members of the Cordes family. Respondent determined the transfers were completed gifts subject to the gift tax. Petitioners argued that Mr. Cordes retained a power to revoke those transfers, thereby rendering the gifts incomplete and not subject to the gift tax.

Petitioners do not expressly argue that Mr. Cordes was the beneficial owner of all the stock in the Cordes family dealerships. However, their argument that Mr. Cordes exercised complete and unencumbered control over the Cordes corporations and retained the power to revoke all stock transfers implicitly recognizes that Mr. Cordes was the beneficial owner of the Cordes

family dealerships.[34]  In fact, in related cases, respondent has argued that Mr. Cordes was the beneficial owner, and we have so held.  Cordes v. Commissioner, T.C. Memo. 1994-377.

The evidence in this case resoundingly demonstrates that Mr. Cordes's control over the Cordes family dealerships remained unimpaired and was so complete that he could do anything he wanted with the Cordes family dealerships regardless of which family member held legal title to the shares of stock.  While the record in this case contains several examples of Mr. Cordes's taking inconsistent positions with the Internal Revenue Service and with others regarding the ownership of the Cordes family dealerships, we simply cannot ignore the overwhelming weight of the evidence establishing that no member of the Cordes family other than Mr. Cordes held any beneficial ownership interest in the Cordes family dealerships.  The family members knew it, corporate employees knew it, and, despite respondent's position in these consolidated cases, respondent knew it (having taken such a position in related cases).

---

[34]In related cases, respondent has argued that Mr. Cordes was the beneficial owner, and we have so held.  Cordes v. Commissioner, T.C. Memo. 1994-377 and T.C. Memo. 2002-125.  This may explain petitioners' failure to argue directly that Mr. Cordes beneficially owned all of the stock in the Cordes corporations.  We note, however, that it is difficult, if not impossible, to reconcile respondent's position in this case that the transfers of stock were completed gifts with respondent's position in the related cases that Mr. Cordes was the beneficial owner of the Cordes corporations.

Mr. Cordes's absolute control over all aspects of the Cordes family dealerships--stock, financial, and operational--was such that we must conclude he was the beneficial owner of all of the Cordes family dealerships.

Because Mr. Cordes owned all beneficial interest in the Cordes family dealerships during the taxable years at issue, all of the disputed transfers were solely of legal title.  Because such transfers of legal title are not subject to the gift tax, we must hold for petitioners with respect to the gift tax cases involving stock in the Cordes family dealerships.

III.  Conclusion

We have carefully considered all remaining arguments made by the parties for contrary holdings and, to the extent not discussed, find them to be irrelevant or without merit.

To reflect the foregoing,

Decisions will be entered

under Rule 155.

APPENDIX A

Schedule of Stock Transfers[1]

Cordes Finance Corp.[2]

| | Mr. Cordes | Mrs. Cordes | B.B. Journeycake | Eddy Ben Cordes Trust | Eddy Ben Cordes |
|---|---|---|---|---|---|
| 1/24/64 | 250 | 249 | 1 | | |
| 1/4/65 | | | (1) | +1 | |
| 1/4/65 | 250 | 249 | 0 | 1 | |
| 1/8/65 | | (28) | | | +28 |
| 1/8/65 | 250 | 221 | | 1 | 28 |
| 12/29/65 | (50) | (50) | | (1) | +101 |
| 12/29/65 | 200 | 171 | | 0 | 129 |
| 12/16/66 | (100) | | | | +100 |
| 12/16/66 | 100 | 171 | | | 229 |
| 1/8/71 | | | | | [3]+105 |
| 1/8/71 | 100 | 171 | | | 334 |
| 3/14/83 | | +334 | | | (334) |
| 3/14/83 | [4]100 | [5]505 | | | 0 |
| 1/14/94 | | (334) | | | +334 |
| 1/14/94 | 100 | [6]171 | | | 334 |

[1]Transfers of shares from one entity to another are shown in parentheses. Receipts of shares by an entity from another are shown with a plus sign.

[2]The incompleteness of the record prevents us from presenting a complete and accurate chart of stock ownership and transfers regarding CFC. For instance, the record shows Jean Ann Richard held legal title to 33.3 percent of the stock in CFC in 1992, 1993 and 1994, but we are not able to decipher the date she acquired legal title to those shares. We are only able to guess the extent to which she obtained legal title to those shares from CFC, see infra note 3, Mr. Cordes, see infra note 4, or Mrs. Cordes, see infra note 5.

Additionally, John Cordes acquired legal title to 33.3 percent of the stock in CFC sometime in 1994, but we are not able to decipher the date he acquired legal title to those shares or from whom he acquired legal title.

[3]On Jan. 8, 1971, CFC issued 500 additional shares of stock. Eddy Ben Cordes received 105 of those shares. The record does not indicate who, if anyone, received the other 395 shares at that time.

[4]The record indicates that Mr. Cordes did not hold legal title to any stock in CFC in 1992 or 1993.

[5]The record indicates that Mrs. Cordes held legal title to 33.4 percent of the stock in CFC in 1992 and 1993.

[6]The record indicates that Mrs. Cordes did not hold legal title to any stock in CFC in 1994.

Eddie Cordes, Inc.

|  | Mr. Cordes | Mrs. Cordes | B.B. Journeycake | Jean Ann Richard | Eddy Ben Cordes |
|---|---|---|---|---|---|
| 1/2/63 | 500 | 400 | 100 | | |
| 1/71 | +100 | | (100) | | |
| 1/71 | 600 | 400 | 0 | | |
| 1/71 | | (400) | | +400 | |
| 1/71 | 600 | 0 | | 400 | |
| 3/29/83 | (600) | | | +600 | |
| 3/29/83 | 0 | | | 1,000 | |
| 1/7/87 | +600 | | | (600) | |
| 1/7/87 | 600 | | | 400 | |
| 7/25/88 | | | | (400) | +400 |
| 7/25/88 | 600 | | | 0 | 400 |
| 8/8/91 | (600) | | | | +600 |
| 8/8/91 | 0 | | | | 1,000 |

Edmund Cordes, Inc.

|  | Mr. Cordes | Mrs. Cordes | John Parkinson | Eddy Ben Cordes | Jean Ann Richard |
|---|---|---|---|---|---|
| 1/4/67 | 600 | 200 | 200 | | |
| 2/15/67 | | (1) | +1 | | |
| 2/15/67 | 600 | 199 | 201 | | |
| 1/8/71 | | (199) | (201) | +400 | |
| 1/8/71 | 600 | 0 | 0 | 400 | |
| 10/26/79 | (500) | | | +500 | |
| 10/26/79 | 100 | | | 900 | |
| 7/25/88 | | | | (900) | [1]+1,000 |
| 7/25/88 | 100 | | | | 1,000 |
| 1/26/89 | +1,000 | | | | (1,000) |
| 1/26/89 | 1,100 | | | | 0 |
| 8/20/91 | (1,000) | | | | +1,000 |
| 8/20/91 | 100 | | | | 1,000 |

[1]The record indicates that on July 25, 1988, Jean Ann Richard received 900 shares of stock in Edmund Cordes, Inc., from Eddy Ben Cordes, and 100 shares of stock in Edmund Cordes, Inc., from Ellen Cordes, Mr. Cordes's daughter-in-law. The record does not indicate how, when, or from whom Ellen Cordes acquired those 100 shares of stock in Edmund Cordes, Inc., nor is it particularly relevant.

John Cordes, Inc.

|  | Mr. Cordes | Mrs. Cordes | Jean Ann Richard | John Cordes |
|---|---|---|---|---|
| 5/1/83 | 300 | 100 | 100 | |
| 1/7/87 | | (100) | (100) | +200 |
| 1/7/87 | 300 | 0 | 0 | 200 |
| 8/8/91 | (300) | | | +300 |
| 8/8/91 | 0 | | | 500 |
| 3/16/94 | +500 | | | (500) |
| 3/16/94 | 500 | | | 0 |
| 4/1/94 | (500) | | | +500 |
| 4/1/94 | 0 | | | 500 |

APPENDIX B

Summary of Conceded, Deemed Conceded, Computational,
and Settled Issues

The following is a summary of issues and/or adjustments
conceded, deemed conceded, of a computational nature, or settled.

The Income Tax Cases

I.   Docket No. 9294-95, Cordes Finance Corp.:
     A.   1991:
          1.   Respondent adjusted petitioner's income for 1991
               to reflect additional gross receipts of $355,200.
               Petitioner concedes this adjustment.
          2.   Respondent adjusted petitioner's income for 1991
               by $37,505, pursuant to sec. 482, to reflect an
               improper deduction for interest expense.
               Petitioner concedes this adjustment.
          3.   Respondent readjusted petitioner's reported bad
               debt deduction for 1991 by $501,267 to reflect
               actual realized bad debts for the taxable year.
               Respondent concedes this adjustment.
          4.   Respondent determined petitioner used an incorrect
               method of accounting for 1991 and readjusted
               petitioner's interest income by $859,338 to
               reflect interest accrued under the accrual method
               of accounting.  The parties stipulated that the
               final decision in Cordes Fin. Corp. v.
               Commissioner, T.C. Memo. 1997-162, affd. without
               published opinion 162 F.3d 1172 (10th Cir. 1998),
               would decide the proper amount of petitioner's
               interest income for 1991.  In accordance with the
               parties' stipulations, respondent concedes this
               adjustment.
          5.   Petitioner conceded an increase in its interest
               income in the amount of $16,600.  This concession
               does not appear to relate to any specific
               adjustment in the notice of deficiency.
          6.   Petitioner claimed a net operating loss for 1994
               and carried a loss back to 1991.  Petitioner
               concedes it was not entitled to claim a net
               operating loss in 1994 or carry a loss back to
               1991.
          7.   Respondent determined petitioner was liable for a
               penalty for 1991 pursuant to sec. 6662(a) for
               substantial understatement of tax.  Petitioner

presented no argument regarding the penalty. We deem petitioner to have conceded the application of the penalty.

II. Docket No. 3284-96, Cordes Finance Corporation:

A. 1992:

1. Respondent adjusted petitioner's income for 1992 to reflect additional gross receipts of $1,174,666.

a. Petitioner concedes this adjustment, to the extent of $311,928.

b. Respondent concedes this adjustment, to the extent of $20,000.

c. The remaining $842,738 at issue reflects gross receipts that respondent determined were income to petitioner for 1992 because respondent determined petitioner used an incorrect method of accounting for its 1992 taxable year and readjusted petitioner's income to reflect income accrued under the accrual method of accounting. The parties stipulated that the final decision in Cordes Fin. Corp. v. Commissioner, supra, would decide the proper amount of petitioner's gross receipts for 1992. In accordance with the parties' stipulations, respondent concedes this adjustment.

2. Respondent readjusted petitioner's reported bad debt deduction for 1992 by $537,599 to reflect substantiated bad debts for the taxable year. Respondent concedes this adjustment.

3. Respondent disallowed $112,756 of petitioner's reported interest expense deduction for 1992 to reflect substantiated interest expenses for the taxable year. Petitioner concedes that adjustment, to the extent of $73,298.

a. As a mathematical computation, petitioner's concession leaves $39,458 of the interest expense at issue for 1992. The parties stipulated, however, that $52,870 is properly at issue.

b. Respondent concedes that portion of the $52,870 paid which constitutes a safe-haven rate of interest calculated, pursuant to sec. 482 and the regulations thereunder, on the underlying loans, to the extent that portion exceeds the amount paid on those underlying loans already allowed as an interest expense on the underlying loans

($27,130).

4. Petitioner claimed a net operating loss for 1994 and carried a loss back to 1992. Petitioner concedes it was not entitled to claim a net operating loss in 1994 or carry a loss back to 1992.

5. Respondent recomputed petitioner's environmental tax and environmental tax deduction. Petitioner presented no argument regarding this recomputation, and we deem petitioner to have conceded this adjustment.

6. Respondent determined petitioner was liable for a civil fraud penalty for 1992 in the amount of $20,832 pursuant to sec. 6663. Respondent concedes that determination.

7. Respondent determined petitioner was liable for a penalty for 1992 pursuant to sec. 6662(a) for substantial understatement of tax. Petitioner presented no argument regarding the penalty. We deem petitioner to have conceded the application of the penalty.

B. 1993:

1. Respondent adjusted petitioner's income for 1993 to reflect additional gross receipts of $1,199,590.

   a. Petitioner concedes this adjustment, to the extent of $326,852.

   b. Respondent concedes this adjustment, to the extent of $30,000.

   c. The remaining $842,738 at issue reflects gross receipts that respondent determined were income to petitioner for 1993 because respondent determined petitioner used an incorrect method of accounting for its 1993 taxable year and readjusted petitioner's income to reflect income accrued under the accrual method of accounting. The parties stipulated that the final decision in Cordes Fin. Corp. v. Commissioner, supra, would decide the proper amount of petitioner's gross receipts for 1993. In accordance with the parties' stipulations, petitioner's income will be increased by $405,181 from gross receipts due to a change in accounting method.

2. Respondent readjusted petitioner's reported bad debt deduction for 1993 by $650,900 to reflect

unsubstantiated bad debts for the taxable year. Respondent concedes this adjustment.

3. Respondent disallowed $140,873 of petitioner's reported interest expense deduction for 1993 to reflect unsubstantiated interest expenses for the taxable year. Petitioner concedes that adjustment, to the extent of $142,214.

   a. As a mathematical computation, petitioner's concession is in excess of that which respondent determined was unsubstantiated. The parties stipulated, however, that $19,105 is properly at issue.

   b. Respondent concedes that portion of the $19,105 paid which constitutes a safe-haven rate of interest calculated, pursuant to sec. 482 and the regulations thereunder, on the underlying loan, to the extent that portion exceeds the amount paid on that underlying loan already allowed as an interest expense on the underlying loan ($895).

4. Petitioner claimed a net operating loss for 1994 and carried a loss back to 1993. Petitioner concedes it was not entitled to claim a net operating loss in 1994 or carry a loss back to 1993.

5. Respondent recomputed petitioner's environmental tax and environmental tax deduction. Petitioner presented no argument regarding this recomputation, and we deem petitioner to have conceded this adjustment.

6. Respondent determined petitioner was liable for a civil fraud penalty for 1993 in the amount of $13,428 pursuant to sec. 6663. Respondent concedes that determination.

7. Respondent determined petitioner was liable for a penalty for 1993 pursuant to sec. 6662(a) for substantial understatement of tax. Petitioner presented no argument regarding the penalty. We deem petitioner to have conceded the application of the penalty.

III. Docket No. 20254-94, June Cordes:

   A. 1989:

   1. Respondent determined petitioner was allowed a deduction for 1989 for a personal exemption in the amount of $2,000. Petitioner did not dispute this determination, and we deem petitioner to have conceded this adjustment.

2. Respondent determined petitioner was allowed a deduction for 1989 for the standard deduction, in the amount of $2,600. Petitioner did not dispute this determination, and we deem petitioner to have conceded this adjustment.

B. 1990:

1. Respondent determined petitioner was allowed a deduction for 1990 for a personal exemption in the amount of $2,050. Petitioner did not dispute this determination, and we deem petitioner to have conceded this adjustment.

2. Respondent determined petitioner was allowed a deduction for 1990 for the standard deduction, in the amount of $2,725. Petitioner did not dispute this determination, and we deem petitioner to have conceded this adjustment.

IV. Docket No. 3305-96, June J. Cordes:

A. 1991:

1. Respondent adjusted petitioner's income for 1991 to reflect her receipt of taxable Social Security benefits in the amount of $2,088. Petitioner concedes this adjustment.

2. Respondent determined petitioner received interest income for 1991 in the amount of $33,000. Respondent concedes this adjustment.

3. Respondent determined petitioner was allowed a deduction for 1991 for the standard deduction, in the amount of $3,500. Petitioner disputed this determination in her petition but presented no further argument. We deem petitioner to have conceded this adjustment.

4. Respondent determined petitioner was liable for an addition to tax for 1991, pursuant to sec. 6651(a)(1), for failure timely to file a tax return. Petitioner concedes she did not file an income tax return for 1991 and concedes that, if the Court concludes petitioner received income for 1991, she is liable for the addition to tax to the extent of that income.

5. Respondent determined petitioner was liable for an addition to tax for 1991, pursuant to sec. 6654, for failure to make estimated tax payments. Petitioner presented no argument regarding the addition to tax and concedes that, if the Court concludes petitioner received income for 1991, she is liable for the addition to tax to the extent of that income.

V.   Docket No. 4182-96, Edmund J. & June J. Cordes:
  A.   1992:
    1.   Respondent determined petitioners had income from constructive dividends in the amount of $56,904 for 1992.
      a.   Petitioners presented no argument regarding CFC's earnings and profits for 1992. In his brief, respondent noted that earnings and profits at the end of 1990, and therefore 1992, were dependent on the final decision in Cordes Fin. Corp. v. Commissioner, T.C. Memo. 1997-162. The decision in Cordes Fin. Corp. became final after the briefs were filed herein. We leave for the Rule 155 computation the calculation of CFC's earnings and profits and its impact on the treatment of the constructive dividends.
      b.   Respondent concedes that, because there were total credits of $326,930 to account No. 312 during 1992, petitioner is entitled to credit that amount against the amount we conclude petitioner received as constructive dividends for 1992.
      c.   Petitioners failed to address a number of the items respondent determined were constructive dividends for 1992. We deem petitioners to have conceded those adjustments. Petitioners' arguments are such that only adjustments pertaining to the distribution of CFC's funds to John Cordes and to the receipt of excess interest from CFC remain at issue.
    2.   Respondent determined petitioners were liable for a penalty for 1992, pursuant to sec. 6662(a), for substantial understatement of tax. Petitioners presented no argument regarding the penalty and concede that, if the Court concludes petitioners received income in 1992, they are liable for the penalty to the extent of that income.
  B.   1993:
    1.   Respondent determined petitioners had income from constructive dividends in the amount of $293,796 for 1993.
      a.   Petitioners presented no argument regarding CFC's earnings and profits for 1993. In his brief, respondent noted that earnings and profits at the end of 1990, and

therefore 1993, were dependent on the final decision in <u>Cordes Fin. Corp. v. Commissioner</u>, <u>supra</u>. The decision in <u>Cordes Fin. Corp.</u> became final after the briefs were filed herein. We leave for the Rule 155 computation the calculation of CFC's earnings and profits and its impact on the treatment of the constructive dividends.

b.  Respondent concedes that because there were total credits of $80,000 to account No. 312 during 1993, petitioner is entitled to credit that amount against the amount we conclude petitioner received as constructive dividends for 1993.

c.  Petitioners failed to address a number of the items respondent determined were constructive dividends for 1993. We deem petitioners to have conceded those adjustments. Petitioners' arguments are such that only adjustments pertaining to the distribution of CFC's funds to John Cordes and to the receipt of excess interest from CFC remain at issue.

2.  Respondent adjusted petitioners' income to reflect their receipt of taxable Social Security benefits in the amount of $6,860. Petitioners concede this adjustment.

3.  Respondent recomputed petitioners' itemized deductions and deduction for exemptions. Petitioners presented no arguments regarding these recomputations, and we deem petitioner to have conceded these adjustments.

4.  Respondent determined petitioners were liable for a penalty for 1993, pursuant to sec. 6662(a), for substantial understatement of tax. Petitioners presented no argument regarding the penalty and concede that, if the Court concludes petitioners received income in 1993, they are liable for the penalty to the extent of that income.

## The Gift Tax Cases

I.  <u>Docket No. 19178-97, Edmund J. Cordes</u>:

A.  <u>1991</u>:

1.  Respondent determined petitioner made other taxable gifts as follows:

a.    Respondent determined petitioner made a taxable gift of $125,000 to John Cordes in 1991. Petitioner, in his petition, alleged that the transfer of $125,000 was a loan, rather than a taxable gift. Petitioner introduced no evidence of a loan and did not present any argument regarding this adjustment in his posttrial briefs. We deem petitioner to have conceded the transfer of $125,000 to John Cordes was a taxable gift.

b.    Respondent determined petitioner made taxable gifts of $100,000 and $84,000 to John Cordes, and forgave portions of the Richard Note and the Bower Note in the amounts of $300,000 and $77,900, respectively, such forgiveness constituting taxable gifts.

(1)    Petitioner conceded in his reply brief that he made gifts, with respect to the Richard Note and the Bower Note, in amounts equal to $300,000 and $77,900, respectively. However, respondent concedes that the correct amounts of the gifts are $214,941 and $77,550, respectively. In light of respondent's concession, we shall treat petitioner's concession as effective to the extent of $214,941 and $77,550, respectively.

(2)    Petitioner, in his petition, alleged that the gifts are not taxable only because the applications of the unified credit and annual exclusions, see sec. 2503, reduce his tax liability. Petitioner has not presented any argument regarding these adjustments in his posttrial briefs. We deem petitioner to have conceded that the gifts are taxable gifts, as defined in sec. 2503(a), subject to the annual exclusion in sec. 2503(b). We leave for the Rule 155 computation whether and to what extent the unified credit and

the annual exclusions are applicable.

B.  1992:

1.  Respondent determined petitioner made a taxable gift of $31,000 to John Cordes in 1992. Petitioner, in his petition, alleged that the transfer of $31,000 was a loan, rather than a taxable gift.  Petitioner introduced no evidence of a loan and did not present any argument regarding this adjustment in his posttrial briefs. We deem petitioner to have conceded the transfer of $31,000 to John Cordes was a taxable gift.

2.  Respondent determined petitioner made a taxable gift of $20,000 to John Cordes in 1992. Petitioner has not presented any argument regarding this adjustment in his petition or posttrial briefs.  We deem petitioner to have conceded that the transfer is a taxable gift, as defined in sec. 2503(a).

3.  Respondent determined petitioner was liable for an addition to tax for 1992, pursuant to sec. 6651(a)(1), for failure to file a gift tax return. Petitioner concedes he did not file a gift tax return for 1992 and did not present any argument regarding the addition to tax.  We deem petitioner to have conceded liability for the addition to tax.

C.  1993:

1.  Respondent determined petitioner made a taxable gift of $10,000 to John Cordes in 1993. Petitioner, in his petition, alleged that the transfer of $10,000 was a loan, rather than a taxable gift.  Petitioner introduced no evidence of a loan and did not present any argument regarding this adjustment in his posttrial briefs. We deem petitioner to have conceded the transfer of $10,000 to John Cordes was a taxable gift.

2.  Respondent determined petitioner made a taxable gift of $30,000 to John Cordes in 1993. Petitioner has not presented any argument regarding this adjustment in his petition or posttrial briefs.  We deem petitioner to have conceded that the transfer is a taxable gift, as defined in sec. 2503(a).

3.  Respondent determined petitioner was liable for an addition to tax for 1993, pursuant to sec. 6651(a)(1), for failure to file a gift tax return. Petitioner concedes he did not file a gift tax

return for 1993 and did not present any argument regarding the addition to tax. We deem petitioner to have conceded liability for the addition to tax.

II. Docket No. 19279-97, June Cordes:

    A. 1993:

        1. Respondent determined petitioner made taxable gifts to John Cordes in 1993, in the aggregate amount of $76,900. Petitioner, in her petition, alleged that the transfers are not taxable gifts only because the applications of the unified credit and annual exclusions, see sec. 2503, reduce her tax liability. Petitioner has not presented any argument regarding these adjustments in her posttrial briefs. We deem petitioner to have conceded that the transfers are taxable gifts, as defined in sec. 2503(a), subject to the annual exclusion in 2503(b). We leave for the Rule 155 computation whether and to what extent the unified credit and the annual exclusions are applicable.

        2. Respondent determined petitioner was liable for an addition to tax for 1993, pursuant to sec. 6651(a)(1), for failure to file a gift tax return. Petitioner concedes she did not file a gift tax return for 1993 and did not present any argument regarding the addition to tax. We deem petitioner to have conceded liability for the addition to tax.